STATE of Wisconsin PUBLIC INTERVENOR, Petitioner-Respondent-Cross Appellant,

Jon SCHUSTER, Petitioner-Intervenor-Respondent,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES, Appellant-Cross Respondent.

Court of Appeals

*No. 88–1581. Submitted on briefs June 8, 1989.—Decided April 19, 1990.*

(Also reported in 456 N.W.2d 878.)

For the petitioner-respondent-cross-appellant the cause was submitted on the briefs of *Thomas J. Dawson,* Wisconsin public intervenor.

For the appellant-cross-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Steven B. Wickland,* assistant attorney general.

For the petitioner-intervenor-respondent, Jon Schuster, the cause was submitted on the brief of *Timm P. Speerschneider* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J. This appeal involves the Wisconsin Department of Natural Resources' conditional grant of an exemption from certain solid waste regulatory requirements to the Brown County Board of Harbor Commissioners. The purpose of the exemption is to allow the Harbor Board to construct an in-water confined disposal facility for materials dredged from the Green Bay harbor and entrance channel. The confined disposal facility will be located near the mouth of the Fox River, at the south end of Green Bay, contiguous to an existing in-water confined disposal facility. The state public intervenor initiated a ch. 227, Stats., review of the grant of exemption. The trial court reversed the department's grant and remanded the matter to the department for further proceedings. The department appeals from the circuit court's decision and order and the public

379

intervenor cross-appeals. We reverse on the department's appeal and affirm on the public intervenor's cross-appeal.

## I.

## THE ISSUES

The issues raised by the department's appeal and the public intervenor's cross-appeal are:[1]

(1) Is the department's finding that the deposit of dredged material in the proposed confined disposal facility does not warrant regulation under chs. 144 to 147, Stats., in light of its low potential hazard to public health or the environment, supported by substantial evidence? We conclude that it is.

(2) Did Wis. Adm. Code, sec. NR 180.13[2] preclude the department from granting an exemption from the operating license requirement for an in-water site or facility for the disposal of dredged materials? We conclude that it did not.

(3) Did the department's conditional grant of exemption violate the conditions of the lakebed grant made by 1985 Wis. Act 185? We conclude that it did not.

(4) Was the department's conditional grant of exemption a "major action[ ] significantly affecting the quality of the human environment" which, under sec.

[1]We have considered the public intervenor's waiver arguments. We conclude that the department's notice of appeal brought up for our review the entire decision of the trial court. The record does not support the public intervenor's waiver argument.

[2]Wisconsin Adm. Code, ch. NR 180 was repealed effective February 1, 1988. Wisconsin Adm. Code Register, January 1988, No. 385. The subject matter of Ch. NR 180 is now found in chs. NR 500–520.

1.11(2)(c), Stats., required the department to prepare an environmental impact statement? We conclude that it was not.

(5) Did the department comply with the minimum review process required under Wis. Adm. Code, sec. NR 150.20(1)(b) for Type III actions? We conclude that it did.

## II.

## BACKGROUND

In 1978, the U.S. Army Corps of Engineers constructed a fifty-five acre in-water confined disposal facility near the mouth of the Fox River at the south end of Green Bay. The facility was designed to contain 1.2 million cubic yards of material dredged from the Green Bay harbor and entrance channel, necessary to maintain congressionally authorized channel depths. Subsequently, the Corps determined that errors had been made computing the dredging requirements and in determining the annual shoaling rate. The Corps estimated that an additional 3.7 million cubic yards of material remained which needed confinement.

In November 1984, the Corps released a Draft Environmental Impact Statement (DEIS) on a proposal to expand the existing confined disposal facility. The department informed the Corps that it had a "large number of concerns." In July 1985, the Corps released its Final Environmental Impact Statement (FEIS) on a proposal to construct a 126-acre confined disposal facility contiguous to, but independent of, the existing fifty-five acre confined disposal facility. As proposed, the new facility will have a capacity of 4.3 million cubic yards of dredge. On July 29, 1985, the department informed the Corps that it still had "major concerns" about the pro-

ject. It commented: "We feel the Corps did not adequately address the large number of concerns expressed about the Draft EIS." The department further expressed its opinion that the FEIS "is not adequate and does not comply with the spirit and intent of the National Environmental Policy Act."

To provide a site for the proposed facility, the state ceded submerged lands under the waters of Green Bay to Brown county. 1985 Wis. Act 185. On April 1, 1986 the Harbor Board submitted to the department a request for exemption from certain solid waste regulatory requirements in sec. 144.44, Stats., and Wis. Adm. Code, sec. NR 180.13, in connection with the construction of the proposed facility.

On May 11, 1987, the department made a conditional grant of the requested exemption to the Harbor Board. The department granted the board an exemption from the feasibility report, plan of operation, and solid waste facility licensing requirements of sec. 144.44, Stats., and from the fees imposed under secs. 144.441 and 144.443. The department did, however, require that the board submit a non-statutory plan of operation prior to construction.

The public intervenor petitioned the circuit court for judicial review of the department's conditional grant of exemption. The court reversed the grant and remanded the matter to the department for further proceedings. The court concluded that the department's decision was arbitrary and capricious; that the department had not satisfied the continuing review requirement of sec. 144.44(7)(g)1, Stats; that the department made only a case-specific evaluation, which is inadequate under the statute; that the department's case-specific evaluation did not support the department's grant of exemption; that the department's administrative rule,

Wis. Adm. Code, sec. NR 180.13, did not permit the department to grant an exemption for an in-water facility; and that the department's grant of exemption violated the Wisconsin Environmental Policy Act.

## III.

## EVIDENCE SUPPORTING GRANT OF EXEMPTION

The public intervenor argues that the department's conditional grant of exemption is not supported by substantial evidence, for two reasons. First, prior to granting the exemption, the department did not make the "continuing review" of the potential hazard to public health or the environment required by sec. 144.44(7)(g)1, Stats. Second, the department's environmental assessment is nothing more than a series of factual conclusions, not findings which support the department's conditional grant of exemption.

## A.

## Continuing Review

Section 144.44(7)(g)1, Stats., provides that "[t]he department shall conduct a continuing review of the potential hazard to public health or the environment of various types of solid wastes and solid waste facilities." The department's exemption authority is triggered only "after a review under subd. 1," and a finding "that regulation under ss. 144.43 to 144.47 is not warranted in light of the potential hazard to public health or the environment."[3] Sec. 144.44(7)(g)2.

---

[3]Section 144.44(7)(g), Stats., provides:

1. The department shall conduct a continuing review of the

██

The requirement that the department may grant an exemption only after a "continuing review" of the potential hazard to the public health and the environment is ambiguous. A statute is ambiguous if it may be construed in different ways by reasonably well-informed persons. *La Crosse Footwear v. LIRC,* 147 Wis. 2d 419, 423, 434 N.W.2d 392, 394 (Ct. App. 1988). A reasonably well-informed person could conclude that the department's exemption authority comes into play only after it has conducted a continuing review of a particular type of solid waste or a particular type of solid waste disposal facility. Thus, the department could not grant an exemption based on a case-specific review of a particular type of solid waste or a particular type of solid waste disposal facility. An equally well-informed person could conclude that the department may conduct a continuing review of the hazard potential of a type of solid waste or solid waste disposal facility in its consideration of a request

potential hazard to public health or the environment of various types of solid wastes and solid waste facilities. The department shall consider information submitted by any person concerning the potential hazard to public health or the environment of any type of solid waste.

2. If the department, after a review under subd. 1, finds that regulation under ss. 144.43 to 144.47 is not warranted in light of the potential hazard to public health or the environment, the department shall either:

a. Promulgate a rule specifying types of solid waste that need not be disposed of at a licensed solid waste disposal facility.

b. On a case-by-case basis, exempt from regulation under ss. 144.43 to 144.47 specified types of solid waste facilities.

c. Authorize an individual generator to dispose of a specified type of solid waste at a site other than a licensed solid waste disposal facility.

3. The department may require periodic testing of solid wastes and impose other conditions on exemptions granted under subd. 2.

for exemption. The legislative history of sec. 144.44(7)(g), Stats., supports the latter construction.

"The guiding principle of statutory construction is to determine the intent of the legislature." *State v. Vonesh,* 135 Wis. 2d 477, 482, 401 N.W.2d 170, 173 (Ct. App. 1986) (citations omitted). Section 144.44(7)(g), Stats., was created by sec. 6, 1985 Wis. Act 46. 1985 Wis. Act 46 was introduced at the request of the governor and was enacted by the legislature in its September 1985 special session. The provisions of sec. 144.44(7), Stats., affected by the Act show that the legislature intended to expand the authority of the department to break the bottleneck in the department's permitting procedures.[4]

Prior to 1985 Wis. Act 46, the department was authorized under sec. 144.44(7), Stats., among other things, to waive the approval process to prevent emergency conditions threatening public health, safety or welfare, to encourage research projects to demonstrate the feasibility of recycling certain solid wastes, and to permit the development of improved methods of solid waste disposal. The Act's amendments substantially broadened the department's authority to grant exemptions for recycling research projects[5] and to encourage the development of improved methods of solid waste

---

[4]The Corps, in its response to the department's comments on its FEIS, represented that the state permitting process for the proposed confined disposal facility would require two to five years to complete.

[5]The Act amended sec. 144.44(7)(b) (intro.), Stats., to permit the department, on recycling research projects, to waive compliance with secs. 144.43 to 144.47. Prior to amendment, the department was authorized only to waive compliance with long-term care and siting requirements.

disposal.[6] The Act also expanded the department's exemption authority to include recycling of high-volume industrial wastes, sec. 144.44(7)(f), and disposal of low-hazard wastes, sec. 144.44(7)(g).

Thus, sec. 144.44(7)(g), Stats., must be read in the context of a broad, comprehensive waiver and exemption plan. The public intervenor's position that sec. 144.44(7)(g) does not permit a case-specific exemption is not supportable when the legislative plan is considered in its entirety. Under the public intervenor's construction, there would be a duplication of agency effort in secs. 144.44(7)(g) and sec. 144.44(7)(c). We, however, read sec. 144.44(7)(c) to provide the department with authority to encourage research and development while sec. 144.44(7)(g) is the department's "action" authority.

Our construction is borne out by the Legislative Reference Bureau's analysis of 1985 Special Session Assembly Bill 3 (1985 Wis. Act 46) which states:

> DNR is . . . authorized to exempt from regulation, by administrative rule, certain types of low-hazard solid wastes *and to exempt, on a case-by-case basis, specified types of solid waste facilities. It may also authorize an individual generator to dispose of a specified type of solid waste at a site other than a licensed facility.* DNR must conduct a continuing review of the potential hazard to public health or the environment of various types of solid waste and solid waste facilities and to consider information submit-

---

[6]Section 144.44(7)(c), Stats. (1983–84) permitted the department to exempt by rule specified solid wastes and solid waste facilities if licensing would discourage development of improved disposal methods. As repealed and recreated, sec. 144.44(7)(c) empowers the department to act to encourage improved methods of solid waste disposal.

ted by any person concerning the potential hazard of any type of solid waste. [Emphasis added.]

Under the public intervenor's construction of sec. 144.44(7)(g), Stats., the department's "continuing review" would have to be made *prior to* and not during the review of an individual project. The public intervenor's reading of the statute is hypertechnical. His reading depreciates the legislative effort to exempt low-hazard wastes in the context of a general plan to eliminate time-consuming siting and permitting procedures when the potential hazard to health or the environment is low. We see no reason why the legislature's objective cannot be achieved by the department's review of a specific exemption request. We reject the public intervenor's construction of sec. 144.44(7)(g).

The public intervenor argues that sec. 144.44(7)(g)2.c, Stats., on which the department relies, does not authorize the department to exempt disposal facilities but only solid wastes. Again, the intervenor's construction is hypertechnical. Section 144.44(7)(g) must be looked at in its entirety. We believe that the *sine qua non* of the paragraph is that the waste exempted be low-hazard. Read in its entirety, we conclude that sec. 144.44(7)(g) authorizes the department to exempt from regulation under secs. 144.43 to 144.47 low-hazard solid waste and solid waste disposal facilities at which such wastes are disposed.

### B.

## ENVIRONMENTAL ASSESSMENT

To grant an exemption under sec. 144.44(7)(g), Stats., the department shall find that regulation under secs. 144.43 to 144.47 is not warranted in light of a low

potential hazard to public health or the environment. The department made that finding as to the Harbor Board's request based on the following: (1) Its field evaluation; (2) the information submitted by the Harbor Board which identified all contaminants believed to be present in the dredged material; (3) its evaluation of the potential for contaminant leaching and movement through soil and water; (4) the lack of present or likely future groundwater supply users; (5) the federal environmental impact statements; (6) the department's environmental assessment; (7) the experience with the existing facility; (8) the construction plans and bid documents; and (9) the conditions of the grant of exemption.

The public intervenor attacks the department's reliance on the federal DEIS and FEIS. He finds the department's reliance "astonishing" in view of the "blistering" attack which the department made on those documents. Paradoxically, the department's criticism of the EISs contributed to the department's ultimate finding. Its comments to the Corps, the Corps's response, and the department's continuing expression of "major concerns" led, finally, to a resolution of those concerns. As we show in Part VI, the department's environmental assessment explains how its concerns were satisfied by specific actions which were taken after the Corps released its FEIS, including major design and operational changes for the proposed confined disposal facility.

The public intervenor dismisses the department's environmental assessment as "nothing more than a series of factual conclusions." In Part VI, we examine the environmental assessment in some detail. For our purposes here, it is sufficient that we find that the environmental assessment provides a substantial basis for the department's grant of exemption. The federal envi-

ronmental impact statements were part of the department's environmental assessment. We do not see why the department was required to reinvent the environmental impact wheels constructed by the Corps. The department's environmental assessment explained how its concerns as to the adequacy of the federal EISs were resolved. In the circumstances, the department's environmental assessment was no less than what the law and logic required.

Finally, the public intervenor complains that the department based its grant of exemption on future compliance with stated conditions. The department would have been seriously remiss had it not imposed conditions to ensure that the proposed confined disposal facility did not, and would not, present a threat to public health or the environment. The department does not deny that the dredged material has a contaminant potential which may cause environmental effects. For this reason, the department conditioned its grant of exemption upon preparation of a plan of operation which will require monitoring of the existing and proposed confined disposal facilities, and upon contingency plans for the correction of potential environment problems. Ensuring that the disposal of low-hazard waste remains low hazard is simply conservative environmental management and does not depreciate the department's finding that in-water disposal of dredged materials in the proposed confined disposal facility does not warrant regulation under secs. 144.43 to 144.47, Stats.

## EFFECT OF WIS. ADM. CODE, SEC. NR 180.13

Wisconsin Adm. Code, sec. NR 180.13(1) (October, 1985) provided that no person shall operate or maintain a solid waste *land* disposal site or facility without an operating license from the department, except as provided in sub. (2). Subsection (2)(c) authorized the department to grant an exemption from the requirements of NR 180.13 "for any site or facility for the *land* disposal of dredge materials . . .." (Emphasis added.) From this language, the public intervenor argues that no authority existed under that section for the department to grant an exemption for an in-water site or facility for the disposal of dredged materials. We do not agree that that conclusion necessarily follows from the language of the rule but, in any event, it is plain that the administrative rule must give way to a later enacted statute. "A rule out of harmony with [a] statute is a mere nullity." *Plain v. Harder,* 268 Wis. 507, 511, 68 N.W.2d 47, 50 (1955) (*quoted in Department of Revenue v. Howick,* 100 Wis. 2d 274, 281, 303 N.W.2d 381, 384 (1981)). NR 180.13 was out of harmony with sec. 144.44(7)(g) insofar as it limited the department's exemption authority to land disposal.

We therefore reject the public intervenor's argument that the grant of exemption to the Harbor Board was not authorized by Wis. Adm. Code, sec. NR 180.13. The administrative rule was superseded by sec. 144.44(7)(g), Stats.

# V.

## VIOLATION OF LAKEBED GRANT

The public intervenor contends that the department's grant of exemption violated the conditions of the lakebed grant. Section 3 of 1985 Wis. Act 185 provides in part: "The facility for dredge spoil containment established under SECTION 1 of this act shall be subject to all requirements of state and federal law governing such facilities, including but not limited to chapters 144 and 147 of the statutes."

The department argues that sec. 144.44(7)(g), Stats., is a requirement of ch. 144 and therefore the proposed confined disposal facility is subject to its exemption authority under the statutes. The public intervenor argues that this is a "cannibalistic approach" to statutory interpretation because, when the department exempted the proposed confined disposal facility from the regulatory requirements of chs. 144 and 147, "it sucked the lifeblood" out of all the other requirements of ch. 144.

We conclude that sec. 3 of 1985 Wis. Act 185 is ambiguous. A reasonably well-informed person could construe sec. 3, 1985 Wis. Act 185 as does the public intervenor. An equally well-informed person could construe the statute as does the department and as did the trial court.

██

We conclude that the legislature intended that the lakebed grant to Brown County would be subject to all the provisions of ch. 144, Stats., including sec. 144.44(7)(g), Stats. Section 144.44(7)(g) was created by sec. 6 of 1985 Wis. Act 46. Therefore, when the legislature enacted 1985 Wis. Act 185, it must be presumed to

have known it had very recently included the exemption provision in ch. 144. *See In Interest of R.E.H.,* 101 Wis. 2d 647, 652, 305 N.W.2d 162, 166 (Ct. App. 1981) (when legislature enacts a statute, it is presumed to act with full knowledge of existing statutes). Section 144.44(7)(g), constitutes legislative recognition that some types of solid wastes and solid waste facilities present only a low potential hazard to public health or the environment. It is logical to infer that when the legislature granted title to the lakebed to Brown County to permit dredge spoil containment thereon, it did not intend to preclude the department from determining that the dredge spoil to be contained and the confined disposal facility presented low potential hazards to public health or the environment. We therefore reject the public intervenor's argument that the conditional grant of exemption violates the lakebed grant.

## VI.

## NEED FOR ENVIRONMENTAL IMPACT STATEMENT

The Wisconsin Environmental Policy Act is contained in sec. 1.11, Stats. "WEPA contains a broad statement of governmental commitment to the protection and enhancement of the environment (ch. 274, Laws of 1971 sec. 1) and imposes upon governmental agencies certain procedural obligations with respect to their decision-making processes to assure that the substantive policies of the Act will be implemented . . .." *Wis. Environmental Decade v. Pub. Service Comm.,* 79 Wis. 2d 409, 414–16, 256 N.W.2d 149, 153 (1977) *(WED III)* (footnote omitted).

Section 1.11(2)(c), Stats., requires that all agencies of the state include an environmental impact statement

in every recommendation or report on a major action significantly affecting the quality of the human environment. The public intervenor contends that the department's grant of exemption was a major action requiring an EIS. We disagree.

Wisconsin Adm. Code, ch. NR 150 implements WEPA. Section NR 150.03(8)(e)13 classifies an exemption under sec. 144.44(7), Stats., from licensing as a type III action. Type III actions "normally do not have the potential to cause significant environmental effects." NR 150.03(3).

The environmental review process for a type III action is limited. Except in certain cases not relevant here, type III actions do not require an environmental assessment or an environmental impact statement, and are exempt from the procedural requirements of secs. NR 150.22 to NR 150.24. Wis. Adm. Code, sec. NR 150.20(1)(b)3. Public notification is limited, except for emergency rules. Type III actions require the issuance of a news release or other public notification under sec. NR 150.21. Section NR 150.20(1)(b)1.

The public intervenor does not attack the rule itself. He argues, however, that, as a matter of law, the department's grant of exemption was a major action requiring an EIS. We consider therefore that the issue joined is whether it was sufficient for the department to follow the type III procedure or whether the department was required to follow the full EIS process under Wis. Adm. Code, secs. NR 150.21 to 150.24.

The department does not rely solely on Wis. Adm. Code, sec. NR 150.03(8)(e)13. The department contends that its determination that the grant of exemption to the Harbor Board is not a major action satisfies the two-part test to which the Wisconsin Supreme Court subjects an

agency's decision not to prepare an EIS. *See WED III,* 79 Wis. 2d at 425, 256 N.W.2d at 158.

In *WED III,* the court concluded that the questions by which the agency's negative-EIS decision is to be tested are,

> First, has the agency developed a reviewable record reflecting a preliminary factual investigation covering the relevant areas of environmental concern in sufficient depth to permit a reasonably informed preliminary judgment of the environmental consequences of the action proposed; second, giving due regard to the agency's expertise where it appears actually to have been applied, does the agency's determination that the action is not a major action significantly affecting the quality of the human environment follow from the results of the agency's investigation in a manner consistent with the exercise of reasonable judgment by an agency committed to compliance with WEPA's obligations?

79 Wis. 2d at 425, 256 N.W.2d at 158 (footnote omitted).

■■

The inquiry needed to support an agency's decision not to file an EIS varies greatly with the circumstances. *WED III,* 79 Wis. 2d at 424, 256 N.W.2d at 157. The "reviewable record" need not follow any particular form; however, it must be in a form susceptible of meaningful evaluation by a court. *Id.* at 425 n.15, 256 N.W.2d at 158. The record must set forth the nature and results of the agency's investigation and the reasoning and basis of its conclusion. *Id.*

The trial court concluded that the department had not provided a reviewable record. We disagree.

The department reviewed the Corps's DEIS and expressed "major concerns" as to the proposal. It reviewed the Corps's FEIS and conveyed to the Corps its

continuing major concerns and disagreements: That the Corps had made an inadequate analysis of alternatives, including upland sites; the Corps lacked plans for mitigating the loss of Green Bay bottomland; the Corps had no plan for ultimate use of the site; the Corps had not assessed how the proposed confined disposal facility would comply with state regulations and requirements; the accuracy of the Corps's interpretation of a model on Bay circulation and current was questionable; and the Corps lacked adequate information as to whether a state water quality certification could be granted. The department concluded that the FEIS "is not adequate and does not comply with the spirit and intent of the National Environment Policy Act."

However, on April 30, 1987, the department issued its environmental assessment which assessed compliance of the proposed confined disposal facility with WEPA. The environmental assessment explained that the department's concerns respecting the Corps's environmental impact assessment had been resolved by the following: (1) Major design and operational changes for the proposed confined disposal facility; (2) completion of a detailed hydrodynamic model of Lower Green Bay; (3) completion of an environmental analysis by the department of an upland disposal site; (4) the lakebed grant to Brown county; and (5) the agreement between the Corps and Brown county on long-term care of the proposed facility. The department concluded that, "the analysis of the [Corps's] final EIS, and subsequent data generated are sufficient to conclude that section 1.11 Wisconsin Statutes and NR 150.20(2)(f) have been complied with." Additionally, on April 6, 1987, the department conditionally granted the Corps a Water Quality Certification for the project.

The department argues that the conditional grant of exemption provides sufficient information from which any interested person can evaluate the environmental effects of the proposed confined disposal facility and assess how those potential effects are to be addressed. The conditional grant required that the Harbor Board submit a detailed plan of operation to the department for review prior to construction. The plan of operation was required to include an investigative program for the environmental effects of the existing and expansion facilities, closure plans, and contingency plans for the correction of potential environmental problems. We conclude that the department developed a reviewable record adequate to justify the exercise of its discretion to grant the Harbor Board a conditional grant of exemption.

The trial court was critical of the department for developing its record long after the department issued its decision. All of the documentation upon which the department based its grant of exemption was available to the department when it made the conditional grant. The fact that the department added some of the documents to the court record after the public intervenor filed his petition for judicial review is irrelevant.

██

We conclude that the department exercised its expertise in making the conditional grant. The record reveals that the proposed confined disposal facility was extensively reviewed by several divisions of the department. That the department was initially critical of the proposal and indicated a strong preference for an upland site, does not detract from the department's ultimate exercise of its expertise when it concluded that its concerns had been sufficiently addressed. The department's determination that the grant of the conditional exemption is not a major action significantly affecting the

quality of the human environment follows from the agency's investigation in a manner consistent with the exercise of reasonable judgment by the department and in compliance with WEPA's obligations.

## VII.

### COMPLIANCE WITH MINIMUM REVIEW PROCESS

Because this was a Type III action, the department was required to issue a news release or other public notification under Wis. Adm. Code, sec. NR 150.21. Sec. NR 150.20(1)(b).

Wisconsin Adm. Code, sec. NR 150.21(1)(a) provides that the department shall develop a news release for each type III action, to include the information enumerated in subds. 1 through 6. The department did prepare such a notice. The public intervenor concedes that a department employee testified at the water quality certification hearing that the employee sent this document with the following notice to the news media:

> *Please note:*
> The attached public notice is being sent to you for whatever news value it may have. While we would appreciate publication, we cannot pay printing costs.
> Thank you.

The note was signed by the assistant environmental impact coordinator for the department. This "news release" is admittedly sketchy. However, when it is considered with the informational notice, we conclude that the requirements of sec. NR 150.21(1) were satisfied.

The public intervenor complains further that interested persons did not receive a copy of the department's

397

environmental assessment. Wisconsin Adm. Code, sec. NR 150.22(3)(a) requires that, "Copies of the environmental analysis shall be provided to any individual or group requesting a copy." We are unable to decide the public intervenor's claim because there is nothing in the record to show that any individual or group requested a copy or, if requested, a copy was not provided.

The public intervenor complains about the notice to his office. In view of his involvement with this proposal over time, he cannot claim that the documents comprising the department's notice were misleading or were not sufficient to give him notice of the department's proposed action. The proposed confined disposal facility was plainly a high priority item with the public intervenor. His affidavit of January 28, 1988 indicates that he initiated actions, intervened or participated in legislative actions, permitting procedures and a contested case hearing relating to the proposed confined disposal facility. Under the circumstances, we conclude that the public intervenor received adequate notice of the department's proposed action.

*By the Court.*—Order affirmed in part and reversed in part.