STATE of Wisconsin PUBLIC INTERVENOR, Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent-Respondent,†

BROWN COUNTY, and the Brown County Board of Harbor Commissioners, Intervenors-Respondents.†

Court of Appeals

No. 91–2031. *Submitted on briefs January 5, 1993.—Decided June 10, 1993.*

(Also reported in 503 N.W.2d 305.)

†Petitions to review granted.
†Petitions to review granted.

For the petitioner-appellant the cause was submitted on the briefs of *Thomas J. Dawson*, Wisconsin public intervenor.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Steven B. Wickland*, assistant attorney general.

For the intervenors-respondents the cause was submitted on the brief of *Winston A. Ostrow* of *Godfrey & Kahn, S.C.* of Green Bay.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J.   Green Bay Harbor, located at the mouth of the Fox River, is subject to shoaling because of silt deposits. In 1978, the U.S. Army Corps of Engineers dredged the harbor to permit larger ships to enter. The spoils were used to construct Kidney Island, about fifty-five acres in size.

The Corps subsequently determined that the fifty-five acres were insufficient to hold all of the spoils being generated, and petitioned the Department of Natural Resources (DNR) for permission to add 126 acres contiguous to the fifty-five-acre site. The DNR conditionally granted the petition. The public intervenor petitioned for judicial review of this conditional grant. We upheld the DNR's action in *State Pub. Intervenor v. DNR,* 156 Wis. 2d 376, 456 N.W.2d 878 (Ct. App. 1990).

The DNR next issued a notice of preliminary determination of water quality certification. The public intervenor filed a petition for a contested case hearing to review the certification. The DNR granted a contested hearing and referred the case to the Department of Administration (DOA), Division of Hearings and Appeals pursuant to sec. 227.43, Stats., and Wis. Adm. Code sec. NR 299.06(6) (Aug. 1983).

The hearing examiner reversed the DNR's certification decision and made extensive findings as to various adverse effects which could result from the additional 126 acres of spoils. Brown County petitioned the DNR secretary for review of the examiner's deci-

669

sion. Brown County and the Brown County Board of Harbor Commissioners also filed a petition for judicial review of the examiner's decision.[1] That petition was not decided and apparently remains pending in the circuit court for Brown County.

The secretary issued a decision in which he concluded that he would review the examiner's decision. The public intervenor petitioned for judicial review of that decision. The secretary affirmed the hearing examiner, but on much narrower grounds. The public intervenor petitioned for judicial review of the secretary's second decision. The two judicial reviews were consolidated and the circuit court affirmed the secretary. This appeal resulted, and we certified this case to the supreme court pursuant to Rule 809.61, Stats. The supreme court denied the certification.

The public intervenor challenges the authority of the secretary to review the DOA hearing examiner's decision. He concedes that Wis. Adm. Code sec. NR 2.20 authorizes that action, but asserts that sec. NR 2.20 was invalidly adopted because it exceeds the statutory authority granted to the DNR.[2] The public intervenor also claims that the secretary's review was tainted by a conflict of interest, that impermissible *ex parte* contacts require reversal of the secretary's decision, and that Brown County waived its right to petition for review. We conclude that sec. NR 2.20 was not legislatively authorized, and therefore reverse. We do not reach the other assertions of error.

---

[1] We will refer to Brown County and the Brown County Board of Harbor Commissioners collectively as "Brown County."

[2] Wisconsin Adm. Code sec. NR 299.06(7)(b) (Aug. 1983) provides that a DOA hearing examiner's determination becomes final when he or she issues findings of fact, conclusions of law and a decision.

*In Interest of A.L.W.*, 153 Wis. 2d 412, 417, 451 N.W.2d 416, 418 (1990), repeated the rule to follow when administrative rules are challenged for lack of statutory authority: "In determining whether an administrative agency has exceeded its statutory authority in promulgating a rule, we must look to the enabling statute to determine whether there is express or implied authorization for the rule." Agencies may exercise "power which arises by fair implication from the express powers." *Wisconsin's Envtl. Decade, Inc. v. Public Serv. Comm'n*, 69 Wis. 2d 1, 16, 230 N.W.2d 243, 251 (1975). But enabling statutes are strictly construed to preclude the exercise of a power not expressly granted. *Racine Fire and Police Comm'n v. Stanfield*, 70 Wis. 2d 395, 399, 234 N.W.2d 307, 309 (1975). Any reasonable doubt as to the existence of an implied power should be resolved against the exercise of such authority. *Kimberly-Clark Corp. v. Public Serv. Comm'n*, 110 Wis. 2d 455, 462, 329 N.W.2d 143, 146 (1983). Whether an administrative agency exceeded its statutory authority in promulgating a rule is a question we resolve without deference to the view of the trial court. *Wisconsin Hosp. Ass'n v. Natural Resources Bd.*, 156 Wis. 2d 688, 705, 457 N.W.2d 879, 886 (Ct. App. 1990). To determine whether a rule is statutorily authorized, we are to "identify the elements of the enabling statute and match the rule against those elements." *Id.* at 706, 457 N.W.2d at 886.

Brown County identifies two statutes which it claims authorize the DNR to adopt Wis. Adm. Code sec. NR 2.20 — secs. 227.43(1)(b) and 227.46(3), Stats.[3] It

---

[3] Section 227.43(1), Stats., provides in relevant part:

The administrator of the division of hearings and appeals in the department of administration shall:

argues that sec. 227.43(1)(b) recognizes that the secretary may conduct a contested case hearing. That is correct, but it does not necessarily follow that the secretary may conduct that hearing after a decision by a hearing examiner, as sec. NR 2.20 authorizes.

Section 227.46(3), Stats., authorizes an agency to hear contested cases in three ways. The agency may direct that the hearing examiner's decision be the agency's final decision. The DNR did so in Wis. Adm. Code sec. NR 299.06(7)(b) (Aug. 1983). That rule, which was in effect when the examiner made his decision, read: "If a hearing is held under sub. (6), the hearing examiner shall make findings of fact, conclusions of law and a decision, *which shall become final when issued in accordance with the procedures in ch. 227, Stats., and this section.*" (Emphasis added.)[4]

An agency may also direct that the record be certified to it without an intervening proposed decision. Section 227.46(3)(b), Stats. But there is no dispute that

---

. . . .
    (b)  Assign a hearing examiner to preside over any hearing of a contested case which is required to be conducted by the department of natural resources *and which is not conducted by the secretary of natural resources.* [Emphasis added.]

Section 227.46(3), Stats., states:

    With respect to contested cases, an agency may by rule or in a particular case may by order:
    (a)  Direct that the hearing examiner's decision be the final decision of the agency;
    (b)  Except as provided in sub. (2) or (4), direct that the record be certified to it without an intervening proposed decision; or
    (c)  Direct that the procedure in sub. (2) be followed, except that in a class 1 proceeding both written and oral argument may be limited.

    [4] An identical provision is now found in Wis. Adm. Code sec. NR 299.05(7)(b).

this was not done in the case before us. Finally, an agency may direct that the procedure of sec. 227.46(2), Stats., be followed. That statute provides for a *proposed* decision by a hearing examiner followed by a decision by officials of an agency. But, that procedure was not followed by the DNR either. The hearing examiner's order was not designated a "proposed order."

Of the three methods of review authorized by sec. 227.46, Stats., only one was followed in this case. Comparing the elements of sec. 227.46(3), Stats., to Wis. Adm. Code sec. NR 2.20, we find no match. Accordingly, we conclude that that statute does not authorize the DNR to adopt sec. NR 2.20.

Brown County argues that *Town of Two Rivers v. DNR,* 105 Wis. 2d 721, 315 N.W.2d 377 (Ct. App. 1981), *overruled on other grounds, Milwaukee Metro. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 72, 375 N.W.2d 648, 652 (1985), holds that the secretary may review a hearing examiner's decision pursuant to Wis. Adm. Code sec. NR 2.20. In *Two Rivers,* we said:

> Further, [Wis. Adm. Code sec.] NR 2.20 allows review of a decision by the independent hearing examiner even if it is a final decision. All that need take place is that a party, adversely affected by the independent hearing examiner's decision, file a written petition for review by the secretary. The secretary of the DNR then has the power to change the decision.

105 Wis. 2d at 737, 315 N.W.2d at 385.

*Two Rivers* speaks to the *effect* of Wis. Adm. Code sec. NR 2.20, not its validity. These two concepts are very different. Decisions by the court of appeals should be read with the understanding that we are an error-correcting court. *State ex rel. Swan v. Elections Bd.,* 133 Wis. 2d 87, 93–94, 394 N.W.2d 732, 735 (1986). We

673

ordinarily do not address issues not raised. *Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992), *cert. denied*, 113 S. Ct. 269 (1992). In *Two Rivers*, we were not asked to consider whether sec. NR 2.20 was validly enacted. Neither Brown County nor the dissent should assume that an unbriefed, undiscussed, and undecided issue was not only lurking in *Two Rivers*, but was decided by that case. *Two Rivers* is not a decision pertaining to the issue raised in this case.

Nor does *Two Rivers* hold that the secretary may review the decision of a hearing examiner after the examiner's final decision. If an examiner makes *proposed* findings of fact and conclusions of law, as authorized by secs. 227.46(3)(c) and 227.46(2), Stats., then the secretary may review those findings and conclusions. But that does not mean that the secretary may also conduct a Wis. Adm. Code sec. NR 2.20 review.

■ The dissent focuses on one of the three methods the legislature has authorized by which an agency may decide contested cases. It concludes that because the legislature has given an agency three methods of deciding contested cases, a fourth method is implied. That conclusion is a logical fallacy. Had the legislature intended a fourth method of deciding contested cases, it would have so provided. Courts have developed a maxim for this principle, *expressio unius est exclusio alterius* — in other words, a statute which expresses one thing is exclusive of another. *Gottlieb v. City of Milwaukee*, 90 Wis. 2d 86, 95 & n.18, 279 N.W.2d 479, 483 & n.18 (Ct. App. 1979). "No agency may promulgate a rule which conflicts with state law." Section 227.10(2), Stats. "An administrative rule 'can have no force against the plain language of the statute.' " *Rich-*

land School Dist. v. DILHR, 166 Wis. 2d 262, 278, 479 N.W.2d 579, 586 (Ct. App. 1991) (quoting *Village of Plain v. Harder*, 268 Wis. 507, 511, 68 N.W.2d 47, 50 (1955)), *aff'd*, 174 Wis. 2d 878, 498 N.W.2d 826 (1993). The dissent's "fair implication" of a fourth method runs squarely into the supreme court's caution that " *[a]ny reasonable doubt* as to the existence of an implied power in an agency should be resolved against the exercise of such authority." *Kimberly-Clark Corp.*, 110 Wis. 2d at 462, 329 N.W.2d at 146 (emphasis added). All that is necessary to defeat the existence of an implied power is a reasonable doubt that such a power exists. *Id.* "Reasonable doubt" is our highest burden of proof. *Kuehn v. Kuehn*, 11 Wis. 2d 15, 26–27, 104 N.W.2d 138, 145 (1960). For us to join in the dissent's reasoning, we would have to conclude that, beyond a reasonable doubt, the legislature intended to give agencies a fourth method by which to decide contested cases. That is too high a standard to overcome.

■

Brown County points out that Wis. Adm. Code sec. NR 2.20 has been in existence since 1976, and has been consistently interpreted by the DNR as authorizing the secretary to review hearing examiners. Accordingly, that interpretation is entitled to great weight. *See Racine Educ. Ass'n v. Commissioner of Ins.*, 158 Wis. 2d 175, 179, 462 N.W.2d 239, 241 (Ct. App. 1990). But there is a limit to this deferential review. Where an agency determines the limits of its own powers, we owe no deference to its decision. *GTE North, Inc. v. Public Serv. Comm'n*, 176 Wis. 2d 559, 564, 500 N.W.2d 284, 286 (1993).

Brown County cites various foreign and Wisconsin cases holding that an administrative agency has the power to reconsider its own decisions since the power to

decide carries with it the power to reconsider. We agree with this view of the law. But the secretary is not reconsidering or modifying his own decision. He is modifying the hearing examiner's decision, a decision the DNR identified as "final" when it enacted Wis. Adm. Code sec. NR 299.06(7)(b) (Aug. 1983). We find no statutory authority for this procedure.

The DNR offers additional arguments. It asserts that *State ex rel. Foshey v. DHSS*, 102 Wis. 2d 505, 514, 307 N.W.2d 315, 319 (Ct. App. 1981), holds that the secretary or his designee may perform a *de novo* review of evidence presented to a hearing examiner. But *Foshey* was decided under a Division of Corrections rule permitting the secretary to review final decisions of a hearing examiner. *Foshey*, 102 Wis. 2d at 516–18 n.8, 307 N.W.2d at 320–21 n.8. Again, as in *Two Rivers*, we did not address the validity of an administrative rule, only its application.

■

The DNR cites numerous federal cases that approve the principle of delegation of agency authority to a hearing examiner with agency retention of ultimate decisionmaking authority. We have no quarrel with the holdings of these cases. But once again, the question is whether Congress gave the head of an agency the power to review a final order of a hearing examiner, not whether the agency head, having been given that power, properly exercised it.

■

We do not hold that the legislature cannot give the DNR the power to enact Wis. Adm. Code sec. NR 2.20. That question is not before us. We hold only that it has not done so. Accordingly, the hearing examiner's decision is the final decision of the DNR, subject only to the judicial review proceeding apparently still pending in

676

the circuit court of Brown County. Therefore, we direct the trial court to vacate the secretary's orders on remand.

Because we have held that Wis. Adm. Code sec. NR 2.20 is invalid and that the secretary's action was void, we need not address the public intervenor's other assertions of error.

*By the Court.*—Judgments reversed and cause remanded with directions.

EICH, C.J. (*dissenting*). The majority holds that the Department of Natural Resources lacked authority to adopt a rule providing a procedure for the department secretary's review of decisions by hearing examiners acting on the agency's behalf. I think that authority is found in sec. 227.46(3), Stats., which provides as follows:

> **227.46   Hearing examiners; examination of evidence by agency.**
> . . . .
> (3)   With respect to contested cases, an agency may by rule . . . :
> (a)   Direct that the hearing examiner's decision be the final decision of the agency;
> (b)   . . . direct that the record be certified to it without an intervening proposed decision; or
> (c)   Direct that the procedure in sub. (2) be followed . . . .[1]

---

[1] Section 227.46(2), Stats., provides that where the officials of the agency who are to render the decision are not present for the hearing, the hearing examiner is to prepare a proposed decision "in a form that may be adopted as the final decision in the case" by the agency. And "[i]f [the] agency's decision varies . . . from the decision of the hearing examiner, the agency's decision shall include an explanation of the . . . variance."

677

The statute authorizes the DNR to specify, by rule, how a final agency decision is to be arrived at in contested cases. The rule, Wis. Adm. Code sec. NR 2.20, provides, in essence, that where the case is heard by a hearing examiner, the hearing examiner's decision will become the agency's final decision if no party seeks review by the secretary within twenty days after its issuance.

To determine whether an administrative agency has exceeded its statutory authority in promulgating a rule, "we . . . look to the enabling statute to determine whether there is *express or implied* authorization for the rule." *Wisconsin Hosp. Ass'n v. Natural Resources Bd.*, 156 Wis. 2d 688, 705, 457 N.W.2d 879, 886 (Ct. App. 1990) (emphasis added).

> To "expressly" authorize a rule, the enabling statute need not spell out every detail of the rule. If it did, no rule would be necessary. Accordingly, whether the exact words used in an administrative rule appear in the statute is not the question. Rather, the reviewing court should identify the elements of the enabling statute and match the rule against those elements. If the rule matches the statutory elements, then the statute expressly authorizes the rule. *Id.* at 705–06, 457 N.W.2d at 886.

We considered the powers conferred upon the agency by sec. 227.46(3), Stats. (then sec. 227.09(3)), in *Town of Two Rivers v. DNR*, 105 Wis. 2d 721, 736–38, 315 N.W.2d 377, 384–85 (Ct. App. 1981), *overruled on other grounds, Milwaukee Metro. Sewerage Dist. v. DNR*, 126 Wis. 2d 63, 72, 375 N.W.2d 648, 652 (1985), concluding that, under the terms of the statute, and those of related laws, the department retains the "ultimate decision-making authority" in contested cases no

matter what procedures are designed for their conduct and review; and we expressly noted that such ultimate authority *should* reside in the department, since it bears "final accountability" for decisions rendered under the statutes it administers. In so concluding, we noted that the department's own rules — notably Wis. Adm. Code sec. NR 2.20 — reflected its "awareness of its power to be the ultimate decision maker" in such cases. *Two Rivers* at 737, 315 N.W.2d at 384.

The majority's opinion dismisses *Two Rivers* with a single sentence: "*Two Rivers* speaks to the *effect* of Wis. Adm. Code sec. NR 2.20, not its validity." Majority op. at 673 (emphasis in original). It may be, as the majority suggests, that we were not called upon in *Two Rivers* to rule upon the precise point raised here: whether sec. 227.46(3), Stats., expressly or impliedly authorizes adoption of sec. NR 2.20. But we recognized in that case that the statute reposed ultimate decisional authority in contested cases in the agency, and that sec. NR 2.20 is one of several rules adopted under that authority. I would carry it further and hold in this case that sec. NR 2.20 was properly adopted under the authority granted to the agency by sec. 227.46(3).

The statute says that the DNR may adopt rules for the conduct of its hearings which "[d]irect that the hearing examiner's decision be the final decision of the agency." Section 227.46(3)(a), Stats. I think the converse is plainly implied: that the department may also adopt rules for the conduct of its hearings that direct that the examiner's decision *not* be final. Indeed, in *Two Rivers* we rejected as "not compelling" an argument claim that the department's "powers [under sec. 227.46(3)] to act as ultimate decision maker are limited to individual cases rather than to a general power to take away authority from the independent hearing

examiner in [certain specified] cases." 105 Wis. 2d at 738, 315 N.W.2d at 385.

I conclude that sec. 227.46(3), Stats., either expressly or by fair implication,[2] authorizes the department to adopt a rule such as Wis. Adm. Code sec. NR 2.20. I would thus affirm the circuit court in all respects.[3]

---

[2]*See Kimberly-Clark Corp. v. Public Serv. Comm'n,* 107 Wis. 2d 177, 181, 320 N.W.2d 5, 7 (Ct. App. 1982), *aff'd,* 110 Wis. 2d 455, 329 N.W.2d 143 (1983) (agency's powers derived from statutes "conferring the power expressly or by fair implication").

[3] The public intervenor raises several other arguments which, because of its decision on the "statutory authorization" issue, the majority does not address. Included among them are these: that the secretary's review did not comply with Wis. Adm. Code sec. NR 2.20; that the fact that the secretary was faced with an examiner's decision "reversing" the department's initial determination created an impermissible "conflict of interest" on his part; and that the secretary's decision was tainted by illegal *ex parte* contacts. In my view, none of these arguments warrants reversal.

As to the first, a review of the secretary's decision demonstrates quite plainly, I think, that he complied with the requirements of the rule. His decision is both lengthy and thorough and, read in context with an earlier decision denying the public intervenor's motion to dismiss the proceedings, establishes such compliance. Nor does the record suggest any partiality on the secretary's part. The decision is painstakingly documented and the public intervenor has provided no basis for invalidating it on grounds of actual or "apparent" bias, or on any theory of inherent or "per se" conflict of interest arising from the combination of investigatory and adjudicatory functions in the agency. *See State ex rel. DeLuca v. Common Council,* 72 Wis. 2d 672, 685, 242 N.W.2d 689, 696 (1976) (combination of investiga-

tory and adjudicatory functions provides no grounds for *per se* disqualification of decisionmaker).

The public intervenor also challenges the decision on grounds that the secretary had received improper *ex parte* communications when copies of correspondence between the governor and representatives of the paper industry about the case were sent to him, and in certain other instances. But in all such instances the letters were disclosed well in advance of the decision in this case and I agree with the attorney general that there is no evidence in the record indicating that any such letter affected the fairness of the proceedings. *See* sec. 227.50(2), Stats., which requires agency decisionmakers receiving *ex parte* communications to place them on the record and provides a procedure for any party desiring to respond to or rebut them.