PUBLIC SERVICE EMPLOYEES UNION and another, Appellants, vs. WISCONSIN EMPLOYMENT RELATIONS BOARD and another, Respondents.*

*October 13—December 19, 1944.*

* Motion for rehearing denied, with $25 costs, on February 13, 1945.

For the appellants there was a brief by *Weisman & Weisman* of Racine, and oral argument by *J. M. Weisman*.

For the respondent Wisconsin Employment Relations Board there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

*Mr. F. H. Prosser* of Milwaukee, appeared for the respondent Wisconsin Gas & Electric Company.

ROSENBERRY, C. J. The nature of the controversy is sufficiently disclosed by the findings and order of the board, which are not questioned on this appeal. They are as follows :

"1. That the respondent, Public Service Employees Union, has committed unfair labor practices contrary to the provisions of section 111.06 of the Wisconsin statutes in that said respondent

"A. Has violated the terms of the collective-bargaining agreement existing between itself and the complainant, Wisconsin Gas & Electric Company, by walking out and going on strike;

"B. Engaged in, promoted and induced picketing and boycotting of the complainant, Wisconsin Gas & Electric Company, without a majority of the employees of the employer in the collective-bargaining unit above described having voted by secret ballot to call any strike.

"2. That the respondent, Theodore C. Rietz, has committed unfair labor practices contrary to the provisions of section 111.06 of the Wisconsin statutes in that said respondent, Theodore C. Rietz

"A. As president of the respondent, Public Service Employees Union, without any authorization, directed the employees of the employer to violate the terms of the collective-bargaining agreement existing between the complainant, Wisconsin Gas & Electric Company, and the Public Service Employees Union, by engaging in a strike;

"B. Has induced the employees of the complainant employer to co-operate in engaging in and promoting picketing and boycotting of the complainant, Wisconsin Gas & Electric Company, without a majority of such employees in the collective-bargaining unit having voted by secret ballot to call any strike.

"3. That the respondent, Erwin A. Kamper, did not commit any unfair labor practice, except such as was committed by all of the employees of the employer, who went on strike at the direction of the president, Theodore C. Rietz.

"Upon the basis of the above and foregoing findings of fact and conclusions of law, the board makes the following

## "Order

"1. That the Public Service Employees Union immediately cease and desist from violating the terms of the collective-bargaining agreement now existing between the complainant employer, Wisconsin Gas & Electric Company, and itself by any strike, walkout or other work stoppage.

"2. That the respondent, Theodore C. Rietz, immediately cease and desist

"A. From inducing or attempting to induce the employees of the Wisconsin Gas & Electric Company to violate any of the terms of the collective-bargaining agreement existing between the Public Service Employees Union and the Wisconsin Gas & Electric Company.

"B. From inducing or attempting to induce the employees of the Wisconsin Gas & Electric Company to co-operate in picketing or boycotting the employer.

"C. From acting or attempting to act as a representative in any capacity for the employees of the complainant employer, either as president of the union, as a member of the grievance committee, bargaining committee, or in any other manner, for a period of one year from the date of the receipt of a copy of this order.

"3. That the respondent, Public Service Employees Union, take the following affirmative action:

"Immediately notify all of its members in writing that it will cease and desist from all activities as above ordered.

"4. *It is further ordered* that the right of the respondent, Public Service Employees Union, to act as the collective-bargaining representative for the employees of the employer in the collective-bargaining unit above described be suspended until such time as the respondent select some person other than the respondent, Theodore C. Rietz, to act as president of such union, and give notice in writing of such selection to the Wisconsin Employment Relations Board, such suspension in no case to exceed a period of six (6) months from the date of receipt of a copy of this order, and compliance with its terms.

"5. *It is further ordered* that the right of Theodore C. Rietz to serve as a representative in any capacity of the employees of the complainant employer, either as president of the respondent union, a member of the grievance committee, bargaining committee, or in any other manner, be and the same hereby is suspended for a period of one (1) year from the date of receipt of a copy of this order.

"6. It is further ordered that the respondent, Public Service Employees Union, and the respondent, Theodore C. Rietz, notify the Wisconsin Employment Relations Board in writing within five (5) days from the date of the receipt of a copy of

this order what steps the respondents have taken to comply therewith."

The appellants contend—(1) That the board had no jurisdiction to issue an order restraining the president of the union from acting or attempting to act as a representative in any capacity for the employees of the company; suspending the right of the union to act as a collective-bargaining representative or as a representative in any capacity for the employees of the company and suspending the right of the officers of the union to serve as a representative in any capacity of the employees of the company.

(2) That the order is void and unconstitutional because in conflict with sec. 8, art. I, and art. IV of the constitution of the United States.

(3) That secs. 111.06 (2) (c) and (e), Wis. Stats., are unconstitutional and void because contrary to sec. 8, art. I, and art. IV of the constitution of the United States.

(4) That the board had no jurisdiction to issue an order restraining the union from engaging in a strike, walkout, or work stoppage because the union has been found guilty of engaging in unfair labor practices.

(5) That the order is unconstitutional and void because it deprives the union of the right to strike.

The contentions made by the plaintiffs on this appeal raise several important and substantial questions not heretofore disposed of by this court. It should be said in the beginning that the plaintiffs base contentions (2), (3), (4), and (5) on the ground that the order and the statute are void because in conflict with the rights guaranteed to plaintiffs by the National Labor Relations Act, 29 USCA, sec. 151 *et seq*. We have considered the matter of conflict between Wisconsin and federal law in a number of other cases and have held that where the National Labor Relations Board has not taken jurisdiction of the controversy, no conflict exists.

If counsel will give careful consideration to *Amalgamated Utility Workers v. Consolidated Edison Co*. (1940) 309

U. S. 261, 265, 267, 60 Sup. Ct. 561, 84 L. Ed. 738, and subsequent cases in which it has been affirmed, he will not again present this contention to the court. In that case the petitioners contended that the National Labor Relations Act created private rights which were enforceable at the suit of a private party. In response to this contention, the court said:

"It is apparent that congress has intrusted to the board exclusively the prosecution of the proceeding by its own complaint, the conduct of the hearing, the adjudication and the granting of appropriate relief. The board as a public agency acting in the public interest, not any private person or group, not any employee or group of employees, is chosen as the instrument to assure protection from the described unfair conduct in order to remove obstructions to interstate commerce."

The court referred to the report of the committee on labor of the house of representatives with approval. In that report it was said:

"No private right of action is contemplated. Essentially the unfair labor practices listed are matters of public concern, by their nature and consequences, present or potential; the proceeding is in the name of the board, upon the board's formal complaint. The form of injunctive and affirmative order is necessary to effectuate the purpose of the bill to remove obstructions to interstate commerce which are by the law declared to be detrimental to the public weal."

This and subsequent cases ought to make it clear that the National Labor Relations Act creates no enforceable private right but is an instrumentality devised by congress to free interstate commerce from burdens and obstructions. Until a matter has been first brought before the National Labor Relations Board and that board has entered its order and the board, not a private party, has sought to have the order enforced and a judgment enforcing the order has been entered, no enforceable private right has been created. If any private right is thus created it relates to a specific controversy of which the National Labor Relations Board has taken jurisdiction.

In *National Labor Relations Board v. Bradford Dyeing Asso.* (1940) 310 U. S. 318, 342, 60 Sup. Ct. 918, 84 L. Ed. 1226, the court said, discussing the National Labor Relations Act:

"If the board has acted within the compass of the power given it by congress, has, on a charge of unfair labor practice, held a 'hearing,' which the statute requires, comporting with the standards of fairness inherent in procedural due process, has made findings based upon substantial evidence and has ordered an appropriate remedy, a like obedience to the statutory law on the part of the court of appeals requires the court to grant enforcement of the board's order. *Until granted such enforcement, the board is powerless to act upon the parties before it.*"

The court further held that when the board has acted in conformity to the National Labor Relations Act, it is the duty of the court to enforce its order.

In *Amalgamated Utility Workers v. Consolidated Edison Co., supra,* the court said (p. 269):

"We think that the provision of the National Labor Relations Act conferring exclusive power upon the board to prevent any unfair labor practice, as defined,—a power not affected by any other means of 'prevention that has been or may be established by agreement, code, law or otherwise'—necessarily embraces exclusive authority to institute proceedings for the violation of the court's decree directing enforcement."

See also *Stewart Die Casting Corp. v. National Labor Relations Board* (7th Cir. 1942), 132 Fed. (2d) 801.

We are at a loss to understand how a private party may invoke the National Labor Relations Act in view of the decision in these cases. The supreme court has repeatedly held that no rights enforceable at the suit of a private party are granted by the National Labor Relations Act.

Counsel's second contention is that so much of the order as restrains the union from violating the terms of the collective-

bargaining agreement then existing between the defendant
Electric Company and the union by any strike, walkout, or
other work stoppage is void because in conflict with the
Fourteenth amendment of the constitution of the United
States. It appears that on December 31, 1942, the union
entered into a collective-bargaining agreement with the de-
fendant, Wisconsin Gas & Electric Company. By the provi-
sions of that instrument the parties agreed that—

"All differences that may arise respecting compliance with
the terms and conditions of this contract and differences relat-
ing to wages, hours, and working conditions of the employees
covered by this agreement, which cannot be agreed upon
through collective bargaining are to be submitted for decision
to an arbitration board . . . and the decision of the arbitra-
tion board thus constituted shall be final and binding. Either
party deciding to arbitrate any case shall notify the other in
writing, and the failure of either party to appoint its own
arbitrator within six working days after the receipt of such
notice shall forfeit its case.

"The company agrees that during the term of this agree-
ment there shall be no lockouts of the workers, the workers on
their part agree that there shall be no strikes or walkouts for
any reason, it being the mutual desire of both parties to pro-
vide for uninterrupted and continuous service. Nothing
herein contained is intended, however, to prevent the resigna-
tion or discharge of individuals."

At all the times mentioned herein the defendant Rietz was
the president of the union. It appears without dispute that
no demands were made upon the company with respect to any
differences between the parties to the contract prior to the
13th day of April, 1943. At 8:40 o'clock in the morning of
the 13th, Rietz notified company officials that he wanted a
meeting with high officials of the company at 10 o'clock on
that morning. No complaint was made or filed or no demand
for anything other than a meeting. Company officials
endeavored to get in contact with Mr. Sherman, the official
who represented the company, but found that he was out of

the city and that it was impossible for them to get him or anyone else before 10 o'clock the next day. Thereupon Rietz immediately called out the employees of the Electric Company who then proceeded to picket the premises intermittently. No demand was made for arbitration in compliance with the terms of the contract nor was a reasonable opportunity given the Electric Company officials to comply with Rietz's demand.

It is to be noted that this part of the order affects no one but the union. The union itself of course was not an employee of the company. We are cited to no case and we find none which holds that a corporation is protected by the Fourteenth amendment in its right to do what it was forbidden to do by this order. The action of the union was in violation of the spirit of the Wisconsin Employment Peace Act and of all other similar acts of which we have any knowledge, including the National Labor Relations Act. The order does not operate upon the employees of the Electric Company but upon the union and of course the union cannot strike, walk out, or stop work. The conduct of the union being in clear violation of the terms of the Employment Peace Act, we discover no grounds upon which its validity may be assailed.

Counsel for the union indulges in considerable argument in regard to the right of employees to picket. We do not discuss that proposition for the reason that it is not involved in this case.

In brief of plaintiffs' counsel, under the title "Questions Involved," the following appears:

"Does the Wisconsin Employment Relations Board have jurisdiction to issue an order restraining the president of the union from acting or attempting to act as a representative in any capacity for the employees of the company, suspending the right of a union to act as collective-bargaining representative for the employees of the company and suspending the right of the officers of the union to serve as a representative in any capacity of the employees of the company?"

A determination of this question would involve the decision of a number of matters of considerable importance. How-

ever, consideration of them is not urged upon us in briefs of counsel nor argued in any way. Under the well-established rule questions not argued will not be considered or decided. *Fisher v. Herrmann* (1903), 118 Wis. 424, 95 N. W. 392; *Kipp v. Laun* (1911), 146 Wis. 591, 131 N. W. 418.

The plaintiff Rietz having been undisputably guilty of an unfair labor practice as defined by ch. 111, Wis. Stats., the board had jurisdiction in the sense that it had power to act. Whether it acted in excess of its powers involves a question of statutory construction which should not be considered or decided without being argued.

*By the Court.*—Judgment affirmed.