IN the MATTER OF the FORECLOSURE OF TAX LIENS PURSUANT TO SECTION 75.521, WISCONSIN STATUTES BY WAUSHARA COUNTY, LIST OF TAX LIENS, FOR 1975 THROUGH 1984, NUMBER 1:

WAUSHARA COUNTY, Petitioner-Respondent-Petitioner,

v.

Sherri L. GRAF, Individually, and as Trustee of Basic Bible Church of America/Order of Almighty God, Chapter 11000 (formerly the Life Science Church, Order of Almighty God, Chapter 11000), Herbert C. Graf, individually and as Trustee of Basic Bible Church of America/Order of Almighty God, Chapter 11004, and Wilbert J. Kelly, individually and as Trustee of Basic Bible Church of America/Order of Almighty God, Chapter 11006, Appellants.†

Supreme Court

*No. 89–1281. Submitted on briefs October 4, 1991.—Decided February 17, 1992.*

(Also reported in 480 N.W.2d 16.)

†Motion for reconsideration denied.

444

For the petitioner-respondent-petitioner there were briefs by *John E. Thiel, Robert W. Burns* and *Godfrey & Kahn, S.C.,* Oshkosh.

For the appellants there was a brief by *Sherri L. Graf,* Wautoma, *Herbert C. Graf,* Oshkosh and *Wilbert J. Kelly,* Wautoma.

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals that reversed the judgment of the circuit court of Waushara County, James Evenson, Judge, foreclosing tax liens on real estate owned by the Basic Bible Church of America/Order of Almighty God, Chapter 11000 (Basic Bible) and vesting title to the property in Waushara County

(County).[1] We reverse the decision of the court of appeals because Basic Bible did not meet its burden of proving that it was tax exempt under sec. 70.11(4), Stats.

The real estate involved in this appeal is in the town of Dakota, Waushara County, Wisconsin. From October 25, 1977 to March 12, 1983 the record owner of the real estate was the Life Science Church, Order of Almighty God, Chapter No. 11000, Rev. Charles Dodge, Bishop. On February 25, 1978, the Life Science Church was issued a new charter by The Basic Bible Church of America, Inc., of Minneapolis, Minnesota, and changed its name to Basic Bible Church of America/Order of Almighty God, Chapter 11000. For purposes of this appeal, we will refer to the respondents collectively as Basic Bible.

In 1977, Basic Bible filed a tax exemption certificate with the local tax assessor. The claimed tax exemption was not granted. Nevertheless, from 1978 to 1983, Basic Bible paid no real property taxes. On March 12, 1983, Basic Bible conveyed the real estate to Sherri L. Graf and Barbara Pogue in trust for Basic Bible's benefit.

In 1987, the County began *in rem* tax foreclosure proceedings pursuant to sec. 75.521, Stats. At trial, the County treasurer testified that the *in rem* procedure covered the tax years 1977 through 1983, and that the tax delinquency for that period, with interest and penalties, was $7,819.15. The treasurer stated that all of the statutory foreclosure requirements of sec. 75.521, had been complied with. This testimony was undisputed.

Basic Bible responded that it was a religious organization, and pursuant to sec. 70.11(4), Stats.,[2] was not

---

[1] *Waushara County v. Graf,* 157 Wis. 2d 539, 461 N.W.2d 143 (Ct. App. 1990).

[2] Section 70.11, Stats., provides in part: Property exempted from general property taxes is: (4) Property owned and used

subject to taxation on the real estate because it was used for religious purposes. Basic Bible presented numerous witnesses, all of whom testified that they had attended "religious services" on the property at various times since 1977. Other activities on the property included bible studies, a memorial service, counselling, agricultural training, and legal research.

Sherri Graf, an ordained minister in the Life Science Church, testified that she is a trustee of Basic Bible, that her husband, Wilbert Kelly, is the pastor of Basic Bible, and that they have resided on the property since 1977. Sherri Graf testified that the parent church in Minneapolis is an exempt organization under I.R.C. sec. 501(c)(3), but acknowledged that Basic Bible had not applied for and did not have such status. Sherri Graf acknowledged that Basic Bible had not taken any action under any state or federal law to incorporate or formally charter Basic Bible.[3] Her testimony revealed that neither she nor Wilbert Kelly had any income and that they lived on donations from individuals visiting Basic Bible. Sherri Graf stated that Basic Bible was always open and was open to everyone.

Assertedly, Basic Bible's beliefs are based upon the King James version of the Bible, the United States Constitution and the Declaration of Independence. Among

---

exclusively by . . . churches or religious . . . associations . . . including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers . . . while such property is not used for profit.

[3]Basic Bible could have incorporated as a religious society under sec. 187.01, Stats., or as a church or religious association under Wisconsin's general incorporation statutes, chs. 180 and 181, Stats. *See United States Nat'l Bank v. Poor Handmaids,* 148 Wis. 613, 615, 135 N.W.2d 121 (1912).

the "fundamental beliefs" of Basic Bible, set forth in a cover letter its members are charged to distribute along with the Declaration of Independence and the United States Constitution, is the following:

> The Laws of Nature and of Nature's Creator are in part set out in the Declaration of Independence and the Constitution of the United States. These are the fundamental Laws and are recognized by the Basic Bible Church.
>
> The members of the Basic Bible Church are bound by oath or affirmation to support these Fundamentals as these represent the Will of the Creator and the Laws of Nature in part; a sacred belief is that each individual owns the right to his own life, that he owns no right over the life of any one else, and that no one else owns any right over his life.

Other beliefs include a conviction that income taxes are illegal, and that federal reserve notes are "frauds" in violation of the law of God and of the Constitution.

The trial court viewed the issue before it as "whether the holding of religious services on a parcel of real estate, even though extending over a period of time, exempts that property from real estate taxation," and concluded in its opinion that it does not:

> [Basic Bible has] not followed any of the traditional or authorized means of obtaining tax exempt status on this property. They have indicated that there is no need to do so. Under the position proposed by respondents, any person could contend, and could actually hold religious services upon a parcel of real estate and declare it exempt from taxation. This could be carried to an unworkable extreme. There would be no control and no means of follow-up. Since all lands are subject to tax unless exempted by law, *the burden is upon respondents to show why they are*

*exempt. They have failed in meeting this obligation.* (Emphasis supplied).

The trial court found that the County complied with the statutory foreclosure requirements, that Basic Bible was not a legal entity, and held that Basic Bible was not tax exempt. It placed emphasis upon Basic Bible's failure to incorporate. The trial court ordered the County entitled to judgment of foreclosure and vested the real estate in fee simple absolute to the County.

Basic Bible, proceeding *pro se* through three of its members, appealed from the judgment of the trial court. Basic Bible raised only two issues on appeal:

1. Did the trial court err in proceeding without responding to challenges to its jurisdiction?

2. Did the trial court have the authority to hear a case concerning the property of a church (non-state entity)?

The County responded only to those jurisdictional issues in its brief to the court of appeals.

The court of appeals reversed the judgment of the trial court. Totally ignoring the only issues posed by Basic Bible, the court of appeals reviewed the entire trial court decision and concluded that the trial court's holding that a church must incorporate before it can claim tax exempt status under sec. 70.11(4), Stats., was erroneous. The court of appeals stated that the County's failure to argue on the appeal the *bona fides* of Basic Bible waived that issue. Finally, the court of appeals held that the title to the real estate was properly held in the name of the trustees for the benefit of Basic Bible, and that the trust was an "entity" which "could claim" tax exemption. The court of appeals did not decide whether Basic Bible was tax exempt.

The County petitioned this court for review of the decision of the court of appeals. We reverse that decision.

We first address whether the methodology employed by the court of appeals was proper. It is a "well-established rule" in Wisconsin that appellate courts need not and ordinarily will not consider or decide issues which are not specifically raised on appeal. *Riley v. Town of Hamilton,* 153 Wis. 2d 582, 588, 451 N.W.2d 454 (Ct. App. 1989), citing *Public S.E. Union v. Wisconsin E.R. Board,* 246 Wis. 190, 199, 16 N.W.2d 823 (1944). In this case, the court of appeals failed to address the only issues raised by Basic Bible and reviewed the entire trial court decision *de novo.*

The majority of the court of appeals did not state any reasons for exercising its discretion to review issues not raised, but Chief Judge Eich, dissenting, speculated that the majority was skewing normal procedure to protect the *pro se* litigants from inadvertently forfeiting their rights. While *pro se* litigants in some circumstances deserve some leniency with regard to waiver of rights, *see, e.g., State ex. rel. Terry v. Traeger,* 60 Wis. 2d 490, 496, 211 N.W.2d 4 (1973), the rule applies only to *pro se* prisoners. *See State ex. rel. Staples v. DH&SS,* 130 Wis. 2d 285, 288, 387 N.W.2d 118 (Ct. App. 1986). The limited scope of the rule was stated in *Traeger,* 60 Wis. 2d at 496:

> We recognize that the confinement of the prisoner and the necessary reasonable regulations of the prison, in addition to the fact that many prisoners are "unlettered" and most are indigent, make it difficult for a prisoner to obtain legal assistance or to

451

know and observe jurisdictional and procedural requirements in submitting his grievances to a court.

These concerns have not been extended to persons who are not incarcerated.

*Pro se* appellants must satisfy all procedural requirements, unless those requirements are waived by the court. They are bound by the same rules that apply to attorneys on appeal. The right to self-representation is "[not] a license not to comply with relevant rules of procedural and substantive law." *Farretta v. California,* 422 U.S. 806, 834 n.46 (1975). While some leniency may be allowed, neither a trial court nor a reviewing court has a duty to walk *pro se* litigants through the procedural requirements or to point them to the proper substantive law. As one commentary states:

> Depending on what the court knows about a particular litigant's circumstances, almost any of the briefing requirements may be waived, except the basic requirements that the brief state the issues, provide the facts necessary to understand them, and present an argument on the issues.
>
> . . ..
> Although the court may make special concessions in certain pro se appeals, it cannot be said that pro se appellants have any advantage over appellants who are represented by counsel. Whatever minor procedural deviations are allowed, a pro se appellant cannot compensate for the lack of legal training and therefore has a greatly reduced likelihood of success on appeal.

D. Walther, P. Grove, M. Heffernan, *Appellate Practice and Procedure in Wisconsin,* Ch. 11, sec. 11.9 (1986).

Basic Bible's appeal to the court of appeals focused solely on two narrow jurisdictional issues. Basic Bible argued that the trial court lacked power to hear the case because Basic Bible's property belongs to God, and God is "not subject to suit." Basic Bible *did not* challenge the circuit court's determination that it did not qualify as an exempt organization under sec. 70.11(4), Stats. The court of appeals had no duty to consider any issues other than those presented to it.

While the court of appeals had no obligation to look beyond the issues presented by Basic Bible, it was within the court's discretion to do so. The principal issue which it in its discretion addressed was the circuit court's conclusion that for a "church" to claim a tax exemption it must be incorporated under the laws of Wisconsin or another state.[4]

The court of appeals concluded that the circuit court erred as a matter of law and, accordingly, reversed. We agree that the circuit court was indeed in error in holding that incorporation was a requirement for the religious exemption. The opinion of the court of appeals convincingly demonstrates that "the church was not required to show that it was incorporated as a religious society or corporation under ch. 187, Stats., or otherwise, to establish that its property was exempt from

---

[4]We overstate the conclusion of the circuit court as did the court of appeals. As we read the circuit court's decision, it concluded that, for Basic Bible to be tax exempt, it must demonstrate "some structure." It then determined that no corporation had ever been formed under the laws of Wisconsin. It therefore concluded: "[T]here is no entity per se, to claim an exemption." The circuit court, however, never went so far as to say a corporate structure was the only type of organization which could be an appropriate "structure" for a church.

taxation." We need not reiterate the excellent discussion and analysis underpinning that conclusion that appears in the court of appeals opinion. 157 Wis. 2d at 539–49. That conclusion was, however, substantially irrelevant. It was not outcome determinative of the fundamental question posed by this litigation: Did Basic Bible meet its burden to demonstrate that it was tax exempt?

It is clear from the record that Basic Bible did not even assert on appeal a basis for tax exemption. It only asserted that the circuit court was without jurisdiction.

Plenary subject matter jurisdiction, however, has been conferred upon the circuit court by art. VII, sec. 8, Wis. Const., which states: "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state . . .." *See In Matter of Guardianship of Eberhardy,* 102 Wis. 2d 539, 548, 307 N.W.2d 881 (1981). Moreover, the circuit court's jurisdiction to hear and decide tax foreclosure cases has been specifically recognized legislatively in sec. 75.521, Stats., which grants county treasurers the authority to foreclose tax liens through judicial *in rem* proceedings.

The assertion that the court was without jurisdiction bordered on the frivolous, and this, the only issue before the court of appeals, could have been dealt with fully in a very summary opinion affirming the trial court.

The fact that the court of appeals correctly concluded that the circuit court erred as a matter of law if it held that incorporation was necessary for a tax exemption did not in itself warrant a reversal of the circuit court. The only question posed is whether the taxpayer has sustained its burden to prove tax exemption. It is clear from the record that it did not. Its only assertion

on appeal was that the trial court lacked jurisdiction. The trial court, in a conclusion based on all the facts, stated that the taxpayer had not sustained its burden of proof. It stated: "Since all lands are subject to tax unless exempted by law, the burden is upon [Basic Bible] to show it is tax exempt. They have failed in meeting this obligation." The court of appeals never considered whether the record demonstrated that Basic Bible had assumed its burden to show that it was tax exempt. It merely held, correctly, that it did not have to be incorporated. This however is a far cry from concluding that, therefore, tax exemption was proved. And, of course, it never did so. What it did, however, was to hold that, because Waushara County had not attacked the *bona fides* of Basic Bible *on appeal,* it waived any objection to the *bona fides* of the church. Accordingly, the court of appeals treated the entire record, which demonstrated the taxpayers' lack of proof of the right of exemption and the county's successful attack on the *bona fides* of Basic Bible as a church, as not existent.

■

The court of appeals relied on *Reiman Associates, Inc. v. R/A Advertising, Inc.,* 102 Wis. 2d 305, 306, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981), and *McGivern v. Amasa Lumber Co.,* 77 Wis. 2d 241, 245-46, 252 N.W.2d 371 (1977). Neither of the citations is applicable to the facts here. In both *Reiman* and *McGivern,* it was the defeated party or parties at trial who failed to brief or assert the particular issue on appeal. They were the losers at trial. It is reasonable to conclude that failure to brief or argue on appeal a trial court ruling or decision that is adverse is indeed a waiver. But that rationale is not applicable in the instant case where the respondent prevailed at trial, is not appealing, and has no reason to further assert the position on which it has already pre-

vailed—particularly in the instant case, where the appellant, Basic Bible, has only raised the issue of jurisdiction. The court of appeals has applied a waiver rule which this court and the court of appeals have found to be appropriate under the facts of the cited cases, but it is not applicable here.

The county had no reason whatsoever to assert or argue a position on which it had already prevailed—a position that was not assailed by the appellant in the court of appeals. There could be no waiver of the county's position under the circumstances here. It is obviously unfair to expect the "respondent" to "respond" to issues not raised by the appellant.

The error of the trial judge in respect to incorporation was not prejudicial, for the record shows a total failure of proof of tax exempt status. Clearly, the trial court's error in that respect cannot be converted into an affirmative tax exempt status. It merely demonstrates that one of many reasons for not affording tax exempt status was incorrect.

Thus concluding, as we do, that in the circumstances here the court of appeals opinion is largely irrelevant to the facts here, we are obliged to review on the basis of the trial court record the tax exempt status of Basic Bible.

The controlling issue on this review is whether Basic Bible is a "church" or "religious association" entitled to property tax exemption under sec. 70.11(4), Stats. The burden of proving tax exempt status is upon the taxpayer. "Tax exemption statutes are matters of legislative grace, and they are to be strictly construed against the granting of the exemption." *Pulfus Poultry Farms v.*

*Town of Leeds,* 149 Wis. 2d 797, 811, 440 N.W.2d 329 (1989). *See also Engineers & Scientists of Milwaukee, Inc. v. Milwaukee,* 38 Wis. 2d 550, 553, 157 N.W.2d 595 (1968).

Where the facts are established, the determination of whether a taxpayer is a "church" or "religious organization" under sec. 70.11(4), Stats., is subject to *de novo* review. *Id.* at 554. *See also Green Scapular Crusade v. Town of Palmyra,* 118 Wis. 2d 135, 138, 345 N.W.2d 523 (Ct. App. 1984).

Section 70.11, Stats., provides in relevant part:

**70.11 Property exempted from taxation.** The property described in this section is exempted from general property taxes . . .:

. . ..

(4) Property owned and used exclusively by . . . churches or religious . . . associations . . . also including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers . . . but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit.

To qualify as a "church" or "religious association" entitled to tax exempt status under sec. 70.11(4), Stats., a taxpayer must pass five statutory tests: (1) the taxpayer must be a *bona fide* church or religious association; (2) the property must be owned and used exclusively for the purposes of the church or religious association; (3) the property involved must be less than 10 acres; (4) the property must be necessary for location and convenience of buildings; and (5) the property must not be used for profit. *See National Foundation v.*

457

*Brookfield,* 65 Wis. 2d 263, 264-65, 222 N.W.2d 608 (1974) (analyzing parallel statutory requirements for exemption of "educational association" under sec. 70.11(4), Stats.).

The first test, whether the taxpayer is a *bona fide* church or religious association, requires the circuit court to consider the sincerity of the organization's asserted beliefs. The circuit court should consider all of the evidence presented by the organization,[5] and determine whether the beliefs asserted by the petitioning organization are held in good faith, or whether the "forms of religious organization were erected for the sole purpose of cloaking a secular enterprise with the legal protections of religion." *Founding Church of Scientology v. United States,* 409 F.2d 1146, 1162 (D.C. Cir. 1969), *cert. denied,* 396 U.S. 963. While a determination of the sincerity of alleged religious beliefs is a sensitive undertaking, it has been accepted by other courts as a means of determining whether an organization is entitled to a religious exemption. *Id.; Gillette v. United States,* 401 U.S. 437, 457 (1971); *Valente v. Larson,* 637 F.2d 562, 570-71 (8th Cir. 1981). Moreover, it avoids the inherent constitutional difficulty in attempting to define "church" or "religious association" in a theistic manner. *See* Laurence H. Tribe, *American Constitutional Law* § 14-6 at 1179-88 (1988).[6]

---

[5]*Madison Particular Council v. Dane County,* 246 Wis. 208, 213, 16 N.W.2d 811 (1944), citing *Catholic Women's Club v. Green Bay,* 180 Wis. 102, 104, 192 N.W. 479 (1923) ("Each case [under sec. 70.11(4), Stats.] depends upon its particular facts.").

[6]Other courts have assessed the *bona fides* of petitioning organizations by applying objective factors based upon aspects of certain "established" religions. *See, e.g., Ideal Life Church of Lake Elmo v. County of Washington,* 304 N.W.2d 308, 315 (Minn.

■■

Whether the taxpayer is incorporated as a church or religious association is but one factor to consider in deciding whether the taxpayer is entitled to exemption. The circuit court and the court of appeals were divided on whether a taxpayer must be incorporated as a church or religious association to qualify for tax exempt status under sec. 70.11(4), Stats. As stated above, we agree with the court of appeals that incorporation is not a prerequisite to tax exempt status. In *Hahn v. Walworth County,* 14 Wis. 2d 147, 153-54, 109 N.W.2d 653 (1961), this court considered whether an educational association incorporated in Illinois qualified for an exemption, and stated:

> Section 70.11(4), Stats., contains no provision that a religious, educational, or benevolent association must be domiciled or incorporated in Wisconsin in order that Wisconsin property, which is owned and used exclusively by it, be exempt from tax. However, subs. (1) and (2) of sec. 72.04 which exempt transfers to certain associations and corporations from inheritance tax, do require, with certain exceptions, that they be organized in Wisconsin. We are of the opinion that if the legislature had intended such requirement in sec. 70.11(4), it would likewise have specifically so provided.

This logic is equally applicable here. Currently, sec. 70.11(4), Stats., specifically exempts from taxation "domestic, *incorporated* historical societies" and "domestic, *incorporated* free public library associa-

1981); *Young Life Campaign v. Patino,* 176 Cal. Rptr. 23, 32 (Cal. Ct. App. 1981). We decline to follow such a course. The myriad potential forms of sincere religious belief and worship militate against the establishment of "traditional" criteria by which to assess new or nontraditional beliefs.

459

tions." (emphasis supplied). It is clear that had the legislature intended to require churches and religious associations to incorporate to gain tax exempt status, it in all likelihood would have specifically so provided.

■■■

While not a prerequisite for exemption, a showing that the petitioning organization is incorporated as a church or religious association will lend credence to that organization's claim that it is a *bona fide* church or religious association. Most importantly, however, the trial court must consider whether the alleged religious beliefs are sincerely held or whether they are merely a subterfuge designed to evade taxation.

As noted by the trial court in this action: "Under the position proposed by [Basic Bible], any person could contend, and could actually hold religious services upon a parcel of real estate and declare it exempt from taxation." In 1978, the acting IRS Commissioner described a modern "tax avoidance device":

> Some individuals and organizations are marketing and promoting "plans" to avoid income taxes. While the "plans" vary in certain respects, a common theme calls for an individual taxpayer to obtain minister's credentials and a charter for a church or religious order by mail for a fee from churches that may or may not be recognized as exempt from federal income tax under I.R.C. § 501(c)(3). No profession of adherence to a creed, dogma, or moral code is required and no duties or fiduciary responsibilities are undertaken in order to receive and administer these charters or credentials.
>
> The "plan" then calls for the individual to take a "vow of poverty" and to assign his assets (house, car, savings account, etc.) and the income earned from current employment to the purported church or order. A major portion of the income assigned to the

church or order from this unrelated occupation is set aside for housing, food, clothing, and other items . . ..

Those interested in protecting the preferences for churches must agree that the Service has an obligation to be vigorous in stopping such schemes.

Jerome Kurtz, *Difficult Definitional Problems in Tax Administration: Religion and Race,* 23 Cath. Law. 301, 305 (1978). The facts of this case present a situation strikingly similar to that described above.

Included in the record of this case is a solicitation letter issued by the parent church of Basic Bible, which states:

The Basic Bible Church of America offors [sic] a religious program whereby you can set up an Auxiliary Church of the Basic Bible Church of America out of your own home, office or business and use the Auxiliary Church that you and your trustees have complete control of the assets of to distribute the church tenets and doctrine to the general public.

This auxiliary church may compliment your own particular church and gives you the opportunity for religious fulfillment and practice of your own religion according to the dictates of your own conscience.

As is shown in the brief attached hereto, as an incidental benefit you can become completely exempt from income taxes, in some states, property taxes, Social Security Taxes and sales taxes in most states, plus-discounts at most stores and airlines.

The Basic Bible Church of America is incorporated under the laws of Minnesota and as shown by the tax exempt letter attached hereto, has a Federal Tax Exempt letter of recognition.

Attached to the letter is a "brief" discussing the attributes of a "religious organization" under the IRS Code. Of

461

nine pages included in the letter, one is the above invitation to join, one is a statement of the "fundamental beliefs and philosophy" of the Basic Bible Church, and fully seven pages are devoted to the tax exempt status of the church. The only inference that can be drawn from this letter is that the Basic Bible Church of America is a subterfuge designed to evade taxation. Sherri Graf's testimony at trial strengthens this inference:

> Our Church Charter also informs us that we are created pursuant to 501(c)(3) of the Internal Revenue Code. As far as state tax exemption, to the best of my knowledge, Chapter 11000 has not applied for such an exemption. We believe, under the laws, the first amendment, as well as the Constitution of the State of Wisconsin, and the tax laws in the State of Wisconsin, that Church property is exempt and that we are doing what is required and would fall into consideration under such law.

The record considered as a whole supports the conclusion that Basic Bible is not a *bona fide* church or religious association under sec. 70.11(4), Stats.

In light of the facts set forth and established at trial, we conclude that Basic Bible failed to prove that it is a *bona fide* church or religious association.[7] Rather, the

[7]Basic Bible in its brief stated that at the trial court "no evidence was introduced to show it was a sham or a fraud." (Respondent's Brief, p.11). Thus, while the *bona fides* issue is not directly raised by the County, it is tangentially discussed by Basic Bible. Although the parties may have missed the mark by not dealing in depth with the *bona fides* issue because of the posture of the case on appeal, this court in its discretion, going to the heart of the litigation, concludes that, based on the record, Basic Bible failed to prove that it is a *bona fide* church or religious organization.

evidence indicates that Basic Bible was established to evade taxation. Accordingly we need not consider the remaining criteria derived from *National Foundation v. Brookfield, supra.* Basic Bible failed to meet its burden of proving that it is a "church" or "religious association" under Wisconsin's tax exemption statute, sec. 70.11(4), Stats. Accordingly, we hold that Basic Bible is not tax exempt.[8]

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court with instructions to reinstate the judgment in favor of Waushara County ordering foreclosure and vesting the real estate to Waushara County in fee simple absolute.

---

[8]In light of this conclusion, we find it unnecessary to discuss the court of appeals' conclusion that Sherri Graf and Barbara Pogue as trustees from 1983 to the present were an "entity" which could claim tax exemption for the years 1977 to 1983.