STARK, P.J.[1]
¶ 1 William Reynolds, pro se, appeals a small claims judgment requiring him to refund money paid to him pursuant to an oral agreement with Bruce Butzlaff, Jill Butzlaff, and Michael Hoerchler (collectively, the Butzlaffs),[2] and an order denying his reconsideration motion.[3] Reynolds argues that the circuit court erred when it determined he breached the agreement, and he instead contends that he is owed damages on his counterclaim for the Butzlaffs' wrongfully terminating his services under that agreement. The Butzlaffs ask us to find Reynolds's appeal is frivolous and award them costs and attorney's fees. We affirm the circuit court and deny the Butzlaffs' motion.
BACKGROUND
¶ 2 In late 2013, the Butzlaffs entered into an oral agreement with Reynolds, a certified forester, to "put together a managed forest log plan, [ ] act as an agent in procuring a purchaser of the timber for any prescribed cuts, prepare cutting notices, and supervise the harvest."[4] For Reynolds's services, the Butzlaffs agreed to pay him twenty-five percent of the income from the timber sales.[5] In addition, as part of Reynolds's creating a managed forest log plan for the Butzlaffs' land, the Butzlaffs would be eligible to receive governmental grant money.
¶ 3 Through Reynolds's assistance, the Butzlaffs entered into a written agreement (the timber contract) with Ashland Mat LLC in January 2014. The timber contract provided that Ashland Mat would harvest the timber on the Butzlaffs' land for use as crane mats. Reynolds calculated lumber volume estimates to be generated from the timber harvest. Based upon Ashland Mat's bid, he informed the Butzlaffs they could likely net over $82,000 from the project. The Butzlaffs received $50,000 from Ashland Mat as a down payment under the timber contract. The Butzlaffs then paid Reynolds $7839 pursuant to the oral agreement-twenty-five percent of the down payment, less $4661 they previously paid Reynolds from grant money.
¶ 4 Reynolds, as the Butzlaffs' agent, prepared the timber contract by modifying a model contract approved by the Wisconsin Woodland Owner's Association. Paragraph six of the timber contract contained language included at Ashland Mat's request that was not part of the model contract. It reads in relevant part: "That if any amount of the [$50,000] advance payment should fail to be depleted upon completion of this timber harvest, [the Butzlaffs] shall refund any such amount of the unrecovered advance in the form of cash or provide additional timber to harvest acceptable to [Ashland Mat]." Reynolds also included as paragraph ten a standard provision from the model contract:
Title to stumpage and any forest products cut under this Contract shall remain with [the Butzlaffs] until payment is received. Title to stumpage and cut products that are not cut and removed before the end of the contract period, even though paid for, shall revert to [the Butzlaffs] and [the Butzlaffs] shall be under no obligation to return payments to [Ashland Mat].
¶ 5 Unfortunately, issues plagued the timber harvest from its beginning. The Butzlaffs expressed ongoing concerns to Reynolds about Ashland Mat's logging practices and a resulting lack of profit. Reynolds also noticed the logging problems and expressed similar concerns to both the Butzlaffs and Ashland Mat. In October 2015, after one extension and about one and one-half years after its execution, the timber contract expired with only $10,442.66 in total harvest proceeds. Not only was this amount much less than the $50,000 down payment and Reynolds's $82,000 estimate, it also included compensation for cut timber that was not originally considered in Reynolds's initial volume estimates.
¶ 6 Reynolds attempted to negotiate revised contracts with Ashland Mat after the timber contract expired. However, the Butzlaffs terminated Reynolds's services because they believed he breached the oral agreement by negligently performing his duties as their agent. The Butzlaffs then entered into a new timber contract (the second timber contract) directly with Ashland Mat in an attempt to provide enough timber to cover the roughly $40,000 difference between Ashland Mat's down payment and the harvest proceeds. The second timber harvest, which also included timber not originally considered in Reynolds's estimates, netted the Butzlaffs only an additional $19,000.
¶ 7 When the Butzlaffs terminated the oral agreement with Reynolds, they asked him to refund an overpayment for his services. Reynolds previously received $12,500, constituting twenty-five percent of Ashland Mat's down payment. Pursuant to the oral agreement, the Butzlaffs claimed Reynolds was only due twenty-five percent of the $10,422.66 in proceeds actually realized at his termination, totaling $2610.67. Nonetheless, the Butzlaffs only sought return of $7839, allowing Reynolds to retain the $4661 from grant money. Reynolds never repaid the requested amount, and the Butzlaffs filed this small claims action in March 2016.
¶ 8 After a two-day bench trial, the circuit court determined that the Butzlaffs were "within their rights" to terminate Reynolds's services at the timber contract's expiration. It emphasized that the Butzlaffs were "not professionals in the sense of being familiar with the ins and outs of timber harvesting, manage forest log plans, cutting plans, and so forth," and that they "rel[ied] on the expertise of Mr. Reynolds." The court also concluded that the oral agreement entitled Reynolds to only twenty-five percent of the timber harvest proceeds actually realized at the time his services were terminated. Accordingly, because the Butzlaffs sought only $7839 in damages, the court entered judgment in their favor and dismissed Reynolds's counterclaim for twenty-five percent of the initial $82,341.20 estimate.
¶ 9 Reynolds subsequently filed a motion for reconsideration in which he proposed the circuit court make a number of amended findings. As pertinent here, Reynolds asked the court to: (1) clarify that he warned the Butzlaffs regarding Ashland Mat's poor logging practices soon after the harvest began; (2) clarify that Reynolds raised concerns about Ashland Mat's logging practices in an email to Ashland Mat in May 2014, rather than May 2015, as previously found by the court; (3) find that the Butzlaffs failed to respond appropriately to Reynolds's warnings concerning Ashland Mat's poor logging practices; and (4) determine that the Butzlaffs "had already profited and will profit further beyond the $50,000 down payment ... in [additional] grant monies made possible by services performed by [Reynolds]." Reynolds then requested the court reverse its judgment and, instead, enter judgment in his favor for his counterclaim. The court amended its findings per Reynolds's first and second requests noted above, but otherwise denied Reynolds's reconsideration motion. Reynolds now appeals.
DISCUSSION
¶ 10 As best as we can discern, Reynolds makes a number of arguments on appeal that we condense to two: (1) the court erred in determining that he breached the oral agreement; and (2) the court erred in calculating damages due to the Butzlaffs and in dismissing his counterclaim. We address these arguments in turn.[6]
1. Breach of the Oral Agreement
¶ 11 Reynolds argues that the circuit court erred when it determined he breached the oral agreement because the court's factual findings regarding his duties under that agreement are clearly erroneous. However, in arguing that he did not breach the oral agreement, Reynolds ignores our standard of review and essentially seeks to retry his case on appeal. Reynolds fails to demonstrate how the circuit court findings are clearly erroneous, and instead merely cites other contrary evidence in the record. We therefore reject his arguments.
¶ 12 We will not set aside the circuit court's factual findings regarding a contract unless they are clearly erroneous. See Steele v. Pacesetter Motor Cars, Inc. , 2003 WI App 242, ¶ 10, 267 Wis. 2d 873, 672 N.W.2d 141. "However, whether the facts found by the trial court constitute a breach of contract is a legal issue we review de novo ." Id. Here, the court's factual findings regarding Reynolds's duties are not clearly erroneous, and we conclude, as did the court, that Reynolds breached the oral agreement based on those facts.
¶ 13 We undertake a three-part analysis in evaluating a breach of contract claim. First we must determine whether a valid contract exists. Id. , ¶ 10. Second, we determine whether the party violated the contract's terms. Id. Third, we analyze whether a party's violation constitutes a material breach. Id. Because neither party contests the existence of a valid contract, we begin with the second part of the analysis.
¶ 14 We agree with the circuit court that Reynolds failed to fulfill his duty to act as the Butzlaffs' agent, thereby violating the terms of the oral agreement. First, the court correctly found Reynolds failed to advise the Butzlaffs to call a halt to the logging so that everyone involved could address Ashland Mat's poor logging practices and resulting failures to meet harvest estimates. The timber contract explicitly allows for harvest suspension or termination based upon poor harvest conditions, excessive property damage, contract breach, or lack of compliance with contracted cutting practices.
¶ 15 Second, the record supports the circuit court's finding that Reynolds failed to alert the Butzlaffs of the conflicting damages provisions in the timber contract he negotiated with Ashland Mat and failed to advise the Butzlaffs as to how those conflicting provisions impacted their potential liability in the event the timber harvest generated less revenue than projected. The circuit court also reasonably concluded Reynolds's belated efforts, made after the expiration of the timber contract, to negotiate a further contract extension were not in the Butzlaffs' best interest but, rather, were taken only to protect Reynolds's self-interest in the project and to ensure his percentage payment on the projected proceeds.
¶ 16 Third, the circuit court properly found Reynolds failed to counsel the Butzlaffs that they could object to any request by Ashland Mat to refund the down payment based on paragraph ten of the timber contract. In all, we conclude Reynolds's failure to fulfill his duties as the Butzlaffs' agent was a breach of the oral agreement.
¶ 17 We also agree with the circuit court that Reynolds's violation constituted a material breach and resulted in damages to the Butzlaffs. The timber contract expired in October 2015 after only $10,442.66 worth of timber had been harvested. Due to Reynolds's failure to properly negotiate the timber contract terms as the Butzlaffs' agent under the oral agreement, the Butzlaffs were potentially liable to refund approximately $40,000 to Ashland Mat for the unreimbursed down payment. As the court explained, "[The Butzlaffs] were within their rights to terminate Mr. Reynolds. They were terribly disappointed by the amount of the harvest, which is shocking in comparison to the estimates of value, that the concerns were not being appropriately addressed."
¶ 18 Reynolds argues the circuit court's findings were clearly erroneous as it incorrectly found he delayed until May 2015 to email Ashland Mat regarding his concerns about its logging practices. Reynolds acknowledges the court recognized its error at the reconsideration hearing and corrected its findings to indicate that Reynolds contacted Ashland Mat with his concerns in May 2014. Nonetheless, he asserts the court somehow failed to account for this correction because the "cornerstone" of the court's decision that the Butzlaffs were justified in terminating his services was that Reynolds delayed in expressing his concerns to them. We disagree.
¶ 19 Reynolds fails to acknowledge that the date of the email was not a determining factor in the circuit court's decision. The court's conclusion that the Butzlaffs were justified in terminating the oral agreement was not based upon any alleged delay on Reynolds's part in communicating concerns about Ashland Mat's logging practices either to the Butzlaffs or to Ashland Mat. Rather, the court concluded from the evidence presented at trial that Reynolds failed to fulfill other contractual duties as the Butzlaffs' agent.
¶ 20 For the first time on appeal, Reynolds also argues the Butzlaffs' trial testimony contained false material statements contrary to WIS. STAT. § 946.31, Wisconsin's criminal perjury statute. Although Reynolds did cross-examine the Butzlaffs concerning potential discrepancies in their testimony about the extent of their acreage subject to harvesting under the second timber contract, he raised no issues concerning any such discrepancies in his arguments at trial or in his motion for reconsideration. Therefore, we decline to further address the merits of Reynolds's arguments in this regard because he failed to raise them in the circuit court. See Apex Elecs. Corp. v. Gee , 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998).
2. Damages Calculation and Dismissal of Reynolds's Counterclaim
¶ 21 Reynolds argues the circuit court erred in calculating his compensation under the oral agreement by failing to credit him with twenty-five percent of additional grant monies the Butzlaffs received as a result of his services.[7] The Butzlaffs respond that any other grants they obtained were not relevant to their damages claim. We agree with the Butzlaffs.
¶ 22 The circuit court found there was some evidence produced at trial that the Butzlaffs received grant money due to Reynolds's services other than the $4661 considered at the time Reynolds was paid a percentage of Ashland Mat's down payment. However, as the court correctly noted, the record is void of any evidence as to how the Butzlaffs' receipt of additional grant money would impact the damages calculation. Additionally, neither party presented evidence to show that they had agreed Reynolds would receive a percentage of the grant money generated through his work. Reynolds accepted, and never objected to, the Butzlaffs subtracting the $4661 in grant money Reynolds already received from his percentage of the $50,000 initial down payment. He was not paid a percentage of the grant money in addition to the percentage he was due on the down payment. Thus, the court properly interpreted the terms of the oral agreement by concluding that Reynolds was not entitled to a percentage of the other grant monies the Butzlaffs received.
¶ 23 Reynolds also argues the circuit court erroneously exercised its discretion in refusing to consider documents on reconsideration that he claimed evidenced the Butzlaffs' receipt of additional grant monies. His argument fails for two reasons. First, a motion for reconsideration is not the proper vehicle for offering new evidence or arguments. See O'Neill v. Buchanan , 186 Wis. 2d 229, 234-35, 519 N.W.2d 750 (Ct. App. 1994). Second, any evidence that the Butzlaffs received additional grant monies due to Reynolds's services was not relevant in calculating damages. Reynolds never argued at trial that he was owed additional compensation for helping the Butzlaffs secure other grants. As the court aptly stated at the reconsideration motion hearing, this is just one example of Reynolds requesting the court to "review a piece of testimony" or "a document that is part of the record ... trying to create arguments about it that weren't made at trial .... It's not fair to any party, and it doesn't really create any end to this process." We agree. The court properly exercised its discretion in refusing to consider the additional documents filed on reconsideration, and it correctly concluded there was no basis to credit Reynolds with a percentage of other grant monies the Butzlaffs received.
¶ 24 Reynolds also argues that the circuit court erred in dismissing his counterclaim. He asserts he was not a party to the timber contract, and, therefore, any potential refund of the down payment due by the Butzlaffs did not affect his compensation under the oral agreement. He argues he is entitled to twenty-five percent of the original $82,000 timber harvest estimate pursuant to the oral agreement, or, at least, twenty-five percent of any additional funds the Butzlaffs received from Ashland Mat after terminating his services. We disagree.
¶ 25 No evidence was produced at trial that the oral agreement was to continue after the timber contract's expiration. Consequently, the circuit court correctly determined that Reynolds was entitled to only twenty-five percent of the timber harvest actually realized at that time. Reynolds's argument that he is entitled to twenty-five percent of the final harvest amount realized after the Butzlaffs entered into the second timber contract is based on the non-meritorious argument that the Butzlaffs unjustly terminated his services. Thus, the court properly determined that the oral agreement entitled Reynolds to twenty-five percent of $10,442.66, which is $2610.67. Because the Butzlaffs only sought return of $7839 from the $12,500 they paid to Reynolds, we also conclude that the circuit court properly awarded the Butzlaffs $7839 in damages.
3. The Butzlaffs' Motion for Frivolous Appeal
¶ 26 The Butzlaffs filed a motion, pursuant to WIS. STAT. RULE 809.25(3), asking this court to conclude that Reynolds's appeal is frivolous. We deny their motion. While Reynolds's arguments are not easy to decipher, the Butzlaffs present no evidence that Reynolds filed and maintained this appeal in bad faith, or in an attempt to harass or maliciously injure the Butzlaffs. Further, it does not appear Reynolds's appeal was without any reasonable basis in law or equity. The fact we affirm the circuit court does not mean Reynolds's appeal was without merit or frivolous.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Reynolds was represented by counsel at trial. The Butzlaffs represented themselves at trial and remain without counsel on appeal.

Prior to trial, Reynolds asserted his limited liability company Reyco Forestry was the proper party and that he, individually, was not. The circuit court disagreed. Neither party argues the court erred in this determination. Accordingly, we refer to Reynolds individually in our opinion.

The terms of the oral agreement are factual findings made by the circuit court, which the parties do not dispute on appeal.

The parties initially disputed the income percentage the Butzlaffs were required to pay Reynolds under the oral agreement. The circuit court found that the Butzlaffs were required to pay Reynolds twenty-five percent of the Butzlaffs' income from the timber sales. The Butzlaffs do not dispute the court's finding on appeal.

Reynolds's arguments are difficult to understand and follow because they lack a logical progression, and his briefs are formatted in indented, numerical list form using different fonts at random. We do provide some leniency to pro se litigants when addressing minimally developed arguments. See Waushara Cty. v. Graf , 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992). However, we will not abandon our neutrality to completely develop legal arguments for them. Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82. We will address Reynolds's arguments as we are able to understand them. To the extent we either misconstrue or do not address arguments, we consider them insufficiently developed. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (holding that we may decline to address inadequately briefed issues).

For the first time on appeal, Reynolds also asserts the Butzlaffs were unjustly enriched by receiving grants he helped secure without compensating him. We generally do not consider issues raised for the first time on appeal. See Apex Elecs. Corp. v. Gee , 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). However, we note that the "definition" of unjust enrichment in the "definitions of key terms" Reynolds provides in his appendix is a correct statement of the law. It states, "Unjust enrichment does not apply where the parties have entered into an express contract." Because the parties have never disputed that an oral agreement-or contract-exists, the unjust enrichment doctrine is inapplicable. See Watts v. Watts , 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987).