**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP232**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018SC16820**

**IN COURT OF APPEALS**
**DISTRICT I**

JAMES DELGLYN,

PLAINTIFF-APPELLANT,

V.

PAULINO DO REGO BARROS, JR. AND EQUIFAX INFORMATION SERVICES LLC,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

¶1 BRASH, P.J.[1] James Delglyn, *pro se*, appeals an order of the trial court granting summary judgment in favor of Paulino Do Rego Barros, Jr. and Equifax Information Systems, LLC (collectively "Equifax"). Delglyn claims that

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Equifax failed to comply with the Fair Credit Reporting Act ("FCRA") in responding to Delglyn's notices of disputed items on his credit report. The trial court found that Equifax had used "reasonable procedures" in responding to Delglyn's notices. Furthermore, the court held that Delglyn had failed to show that the information being reported was inaccurate and, as a result, any further inquiry was unnecessary as a matter of law. Thus, the court granted Equifax's motion for summary judgment. We affirm.

## BACKGROUND

¶2      On January 23, 2018, Delglyn sent a Notice of Dispute to Equifax regarding four accounts: Health Resources & Services; Department of Treasury; Pinnacle Credit Services; and Charles Schwab Bank, regarding a credit inquiry. In response, Equifax generated Automated Consumer Dispute Verification forms that were sent to each creditor on January 30, 2018, to investigate Delglyn's claims.

¶3      Health Resources & Services responded on January 31, 2018 verifying that the account was Delglyn's, and that it was a student loan with a delinquency dating back to June 2012 with an outstanding debt of $293. In response to the dispute regarding Pinnacle Credit Services, Resurgent Capital Services LP responded on February 19, 2018, verified that the account was Delglyn's, and that it was a collection for Verizon Wireless with an outstanding past due balance of $455. Additionally, Charles Schwab Bank confirmed that it was not reporting on Delglyn's credit file as of January 30, 2018.

¶4 Equifax sent Delglyn a letter to inform him of these results on February 19, 2018.[2] Generally speaking, the response letter explains the results of each account investigated and any action taken by Equifax—whether the account was verified, deleted, or updated based on information received from the creditor. The letter also explains that some account inquiries can only be seen by the consumer and do not impact the consumer's credit score. Furthermore, the letter states that additional questions about a particular account should be directed to the creditor, and provides contact information for that creditor.

¶5 In the meantime, Equifax received a second Notice of Dispute on February 13, 2018, but this time regarding only Pinnacle Credit Services and Health Resources & Services. Equifax sent Automated Consumer Dispute Verification forms to those two creditors, who confirmed the same account information as they had previously. Equifax sent Delglyn the results of that reinvestigation on March 5, 2018.

¶6 Equifax received a third Notice of Dispute from Delglyn on March 29, 2018, again regarding those same two accounts. Equifax initiated another reinvestigation into those accounts. The Health Resources & Services account again verified the same credit information. However, Pinnacle Credit Services was no longer reporting on Delglyn's credit report by the time the third investigation was commenced, so that account was removed from Delglyn's credit

---

[2] We were unable to locate in the record information addressing the dispute regarding the Department of Treasury; however, Equifax stated in its summary judgment motion that any of the accounts disputed in Delglyn's initial Notice of Dispute which were not addressed were not reported to Equifax. We further note that Delglyn's subsequent Notices of Dispute sent to Equifax did not include the Department of Treasury as a disputed item.

report. Delglyn was informed of this in the April 6, 2018 response letter he was sent by Equifax.

¶7      Subsequently, Delglyn filed the small claims complaint underlying this appeal in May 2018. He claimed that Equifax had failed to comply with the FCRA, and sought monetary damages. An evidentiary hearing was held on the matter before a court commissioner in September 2018, who ruled in favor of Equifax. Delglyn appealed that decision to the Milwaukee County Circuit Court.

¶8      Equifax filed a motion for summary judgment in November 2018, arguing that it followed reasonable procedures in investigating Delglyn's disputed accounts. Furthermore, Equifax contended that Delglyn had not shown that Equifax failed to follow reasonable procedures, that his credit report contained any inaccurate information, or that he had incurred any damages. Therefore, Equifax asserted that there was no violation of the FCRA.

¶9      The trial court agreed and granted Equifax's motion for summary judgment. This appeal follows.

## DISCUSSION

¶10     This court reviews a trial court's decision to grant summary judgment independently, applying the same methodology as the trial court, in accordance with WIS. STAT. § 802.08. *Kohn v. Darlington Cmty. Sch.*, 2005 WI 99, ¶11, 283 Wis. 2d 1, 698 N.W.2d 794. Summary judgment shall be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sec. 802.08(2). In determining whether summary judgment "was

appropriately granted, '[w]e view the summary judgment materials in the light most favorable to the nonmoving party.'" **Kohn**, 283 Wis. 2d 1, ¶11 (citations omitted; brackets in **Kohn**).

¶11 The FCRA provides that "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." **Childress v. Experian Info. Sols., Inc.**, 790 F.3d 745, 746 (7th Cir. 2015) (citation omitted). Under the FCRA, if a consumer disputes the "completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency," and that consumer "notifies the agency directly … of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate[.]" 15 U.S.C. § 1681i(a)(1)(A). To establish that a credit reporting agency violated the FCRA, "a consumer must show that there was inaccurate information in [his or] her consumer credit report because of the [agency]'s failure to follow reasonable procedures and that this inaccuracy caused [him or] her to suffer damages." **Webb v. Experian Info. Servs., Inc.**, 2017 WL 1022012, at *3 (N.D. Ill. Mar. 16, 2017).

¶12 In this case, Equifax, in support of its motion for summary judgment, submitted an affidavit from one of its employees who had reviewed Delglyn's file and explained the procedures that had been followed in responding

to Delglyn's Notices of Dispute.[3] It also included copies of the Automated Consumer Dispute Verification forms that were sent as part of its investigation.

¶13 Additionally, Equifax provided a copy of its response letter sent to Delglyn on March 5, 2018. In that letter, Equifax specifically states that the accounts for Pinnacle Credit Services and Health Resources & Services had been verified as belonging to Delglyn and that the accounts had been updated with information provided by the creditors. Equifax also stated that further questions regarding these accounts should be directed to those creditors, and provided contact information for each.

¶14 We conclude that this constitutes a reasonable investigation into the accuracy of the information for the accounts disputed by Delglyn, as required by the FCRA. *See* 15 U.S.C. § 1681i(a)(1)(A); *see also* **Childress**, 790 F.3d at 746. In fact, Equifax established that the information for the two accounts that Delglyn repeatedly disputed—Pinnacle Credit Services and Health Resources & Services—were both verified as accurate by Equifax. "Accurate reporting is a complete defense to … a [§] 1681i claim." **Fahey v. Experian Info. Sols., Inc.**, 571 F. Supp. 2d 1082, 1088 (E.D. Mo. 2008) (citing **Cahlin v. General Motors Acceptance Corp.**, 936 F.2d 1151, 1156, 1160 (11th Cir. 1991). Thus, Delglyn

---

[3] Delglyn complains that Equifax submitted an updated version of this affidavit in January 2019, less than twenty-four hours before the hearing. However, the only difference in the two versions is that the updated affidavit included the requisite notarization of the affiant; otherwise, the content of the updated affidavit was the same as the original affidavit.

failed to demonstrate that there was inaccurate information on his credit report and, therefore, his claim fails.[4]

¶15    Nevertheless, Delglyn argues that Equifax was in violation of the FCRA because it did not provide any evidence of contracts between Delglyn and these creditors.  However, that is not required of a credit reporting agency under 15 U.S.C. § 1681i; Equifax would not be a party to any contracts between Delglyn and his creditors.  Rather, Delglyn should have taken heed of the contact information provided by Equifax for each disputed creditor and requested further account information from them.

¶16    Delglyn also takes issue with the trial court holding him to the same standards as a "licensed attorney."  While we do have a policy of liberally construing *pro se* submissions, *see **Amek bin-Rilla v. Israel***, 113 Wis. 2d 514, 520-21, 335 N.W.2d 384 (1983), the "right to self-representation is '[not] a license not to comply with relevant rules of procedural and substantive law.'"  *See **Waushara Cty. v. Graf***, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992) (citation omitted; brackets in ***Graf***).  Indeed, in his appeal Delglyn fails to present any cogent argument that is even remotely supported by relevant law.

---

[4] We note that Delglyn sought damages of $1 million in compensatory damages and $2 million in punitive damages, based on the rejection of his application with Quicken Loans for a $160,000 mortgage.  Because he failed to establish that there was inaccurate information on his credit report, Delglyn is not entitled to damages.  *See **Sarver v. Experian Info. Sols.***, 390 F.3d 969, 971 (7th Cir. 2004) ("In order to prevail on his claims, [the plaintiff] must show that he suffered damages as a result of the inaccurate information."); ***Crabill v. Trans Union, L.L.C.***, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages[.]'") (citation omitted).  We further note with interest that Delglyn was not required to pay the filing fee for his small claims action due to his being indigent.

¶17 In sum, the trial court properly determined, after reviewing the materials submitted, that there were no disputes of material fact and that Equifax was entitled to judgment as a matter of law. Accordingly, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.